1  Amrit Kumar
2  601, 6th Floor, Rupa Solitare
   Millennium Business Park, Plot No. A-1
   Mahape, Mumbai
3  Maharashtra-400710, India
   Email: amritkum@proton.me
4  Pro Se

**FILED**
CLERK, U.S. DISTRICT COURT

1/3/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

5

6  ## UNITED STATES DISTRICT COURT
   ## IN AND FOR THE CENTRAL DISTRICT
7  ## OF CALIFORNIA

8
   MG PREMIUM LTD, a limited liability    )
9  Company organized under the laws of    )   Case No. 2:21-cv-08533-MCS-KK
   the Republic of Cyprus                 )
10                                         )   **ANSWER of AMRIT KUMAR**
              Plaintiff,                   )   **d/b/a GOODPORN.TO to the**
11                                         )   **FIRST AMENDED COMPLAINT**
        vs.                                )
12                                         )
   JOHN DOES 1-20, d/b/a                   )
13 GOODPORN. TO                            )
                                           )
14            Defendants.                  )

15

16  ## DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT

17

18  COMES NOW, the Defendant, AMRIT KUMAR, d/b/a GOODPORN.TO,

19  erroneously named in the Complaint as, JOHN DOES 1-20, d/b/a Goodporn.to

20  (herein referred to as "the Defendant"), hereby files this Answer to First Amended

21  Complaint for Copyright Infringement, Inducement of Copyright Infringement,

22  Vicarious and Contributory Copyright Infringement, Declaratory Judgment

1

Regarding Ownership and Non-infringement and Demand for Jury Trial, and in support thereof, states as follows.

1. The Defendant denies the allegations contained in paragraph 1 of the complaint that any copyrights were infringed. The Defendant asserts that the ownership of MG Premium's contents were transferred to the Defendant according to the contract between the two parties, as evidenced by Exhibit B.

2. The Defendant denies the allegations contained in paragraph 2 of the complaint. The Defendant has a valid contract with MG Premium transferring ownership of their contents to the Defendant. As an Indian national living in India, the Defendant is not subject to the provisions of the DMCA. The Defendant also voluntarily honors valid copyright or DMCA requests.

3. The Defendant denies the allegations contained in paragraph 3 of the complaint. The Defendant asserts that he is the owner of the contents in question as a result of a contract with MG Premium. The Defendant denies any infringement of the Plaintiff's copyrights.

4. Paragraph 4 requires no answer but, to the extent that facts are alleged, this paragraph is denied.

5. The Defendant denies the allegations contained in paragraph 5 of the complaint.

6. The Defendant partially admits to the allegations contained in paragraph 6 of the complaint. Defendant admits that Amrit Kumar is resident of India,

Defendant doesn't have sufficient knowledge to the other allegations in paragraph 6 to admit or deny them.

7.The Defendant deny to the allegations contained in paragraph 7 of the complaint. The Defendant operates one (1) website at URL of https://goodporn.to

8. The Defendant denies the allegations contained in paragraph 8 of the complaint.

9. The Defendant denies the allegations contained in paragraph 9 of the complaint.

10. The Defendant denies the allegations contained in paragraph 10 of the complaint. Similarweb.com only estimates the number of visitors to a website and their guesses are not reliable. Furthermore, the origins of their signals and sources are not clearly disclosed, rendering their estimates questionable.

11. The Defendant denies the allegations contained in paragraph 11 of the complaint. Similarweb.com only estimates the number of visitors to a website and their guesses are not reliable. Furthermore, the origins of their signals and sources are not clearly disclosed, rendering their estimates questionable.

12. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 12 of the complaint.

13. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 13 of the complaint.

14. The Defendant denies the allegations contained in paragraph 14 of the complaint. The Defendant does not display ads based on the geo-location of users,

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

nor does it track users based on their location in order to serve them ads. It is possible that third-party ad networks may show different ads based on user geo-location, but the Defendant has no control over this.

15.  The Defendant denies the allegations contained in paragraph 15 of the complaint.

16. The Defendant denies the allegations contained in paragraph 16 of the complaint.

17. The Defendant denies the allegations contained in paragraph 17 of the complaint.

18. The Defendant denies the allegations contained in paragraph 18 of the complaint.

19. The Defendant denies the allegations contained in paragraph 19 of the complaint.

20. The Defendant denies the allegations contained in paragraph 20 of the complaint.

21. The Defendant denies the allegations contained in paragraph 21 of the complaint. The ownership of MG premium contents has transferred to the Defendant according to the "Bilateral agreement" between the Defendant and MG premium.

22. Amrit Kumar is a resident of Mumbai, India.  The remaining allegations of paragraph 22 are denied.

23. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 23 of the complaint.

22. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 22 of the complaint.

23. The Defendant deny to the allegations contained in paragraph 23 of the complaint. The Defendant operates one (1) website at URL of https://goodporn.to

24. The Defendant denies the allegations contained in paragraph 24 of the complaint.

25. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 25 of the complaint.

26. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 26 of the complaint.

27. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 27 of the complaint.

28. The Defendant denies the allegations contained in paragraph 28 of the complaint.

29. The Defendant denies the allegations contained in paragraph 29 of the complaint.

30. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 30 of the complaint. The Complaint alleges that the GoodPorn Website has "highly interactive" functions, but the Defendant is

unable to determine what functions the Plaintiff is alleging to be "highly interactive."

31. The Defendant denies the allegations contained in paragraph 31 of the complaint.

32. The Defendant partially deny the allegations contained in paragraph 32 of the complaint. The ownership of MG Premium's contents has been transferred to the Defendant according to the "Bilateral Agreement" between the Defendant and MG Premium.

33. The Defendant denies the allegations contained in paragraph 33 of the complaint.

34. The Defendant admits the allegations contained in paragraph 34 of the complaint.

35. The Defendant admits the allegations contained in paragraph 35 of the complaint.

36. The Defendant denies the allegations contained in paragraph 36 of the complaint.

37. The Defendant partially deny the allegations contained in paragraph 37 of the complaint. The "pop-up" advertisement does not appear randomly; rather, it appears based on specific parameters.

38. The Defendant denies the allegations contained in paragraph 38 of the complaint. The Defendant does not serve ads or track the location of users based

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

on their geo-location. Instead, the Defendant uses third-party advertising networks, which may show different ads based on the geo-location of visitors.

39. The Defendant partially deny the allegations contained in paragraph 39 of the complaint.

40. The Defendant denies the allegations contained in paragraph 40 of the complaint. As an Indian national living in India, the Defendant is not subject to the provisions of the DMCA. The Defendant also voluntarily honors valid copyright or DMCA requests.

41. The Defendant denies the allegations contained in paragraph 41 of the complaint.

42. The Defendant denies the allegations contained in paragraph 42 of the complaint.

43. The Defendant denies the allegations contained in paragraph 43 of the complaint. The Defendant asserts that the ownership of MG Premium's content was transferred to the Defendant through a bilateral agreement between the two parties. The Defendant further asserts that the Digital Millennium Copyright Act (DMCA) does not apply to the Defendant, as the Defendant is an Indian national residing in India. The Defendant also states that he willingly complies with valid copyright or DMCA requests.

44. The Defendant admits the allegations contained in paragraph 44 of the complaint.

45. The Defendant denies the allegations contained in paragraph 45 of the complaint as written wrong date.

46. The Defendant partially deny the allegations contained in paragraph 46 of the complaint. According to the information provided on Plaintiff's DMCA page at https://www.pornhub.com/information/dmca failure to comply with the requirements of Section 512(c)(3) of the DMCA may result in the notice not being effective., it appears that Plaintiff has designed their website in a way that requires content owners to send a DMCA notice in order to have their content removed from the website. The Defendant asserts that this requirement may force copyright owners, including the Defendant, to send a DMCA notice to the Plaintiff's website in order to have their content removed.

47. The Defendant denies the allegations contained in paragraph 47 of the complaint.

48. The Defendant denies the allegations contained in paragraph 48 of the complaint.

49. The Defendant denies the allegations contained in paragraph 49 of the complaint.

50. The Defendant denies the allegations contained in paragraph 50 of the complaint.

51. The Defendant denies the allegations contained in paragraph 51 of the complaint.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

52. The Defendant denies the allegations contained in paragraph 52 of the complaint.

53. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 53 of the complaint.

54. The Defendant denies the allegations contained in paragraph 54 of the complaint.

55. The Defendant denies the allegations contained in paragraph 55 of the complaint.

56. Paragraph 56 requires no answer but, to the extent that facts are alleged, this paragraph is denied.

57. The Defendant denies the allegations contained in paragraph 57 of the complaint. The Defendant did not infringe upon the copyright of the plaintiff. The ownership of the content in question was transferred to the Defendant according to the bilateral agreement between the Defendant and MG premium. The Digital Millennium Copyright Act does not apply to the Defendant, as the Defendant is an Indian national living in India. The Defendant willingly honors valid copyright or DMCA requests.

58. The Defendant denies the allegations contained in paragraph 58 of the complaint.

59. The Defendant lacks sufficient information to admit or deny the allegations contained in paragraph 59 of the complaint.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

60. The Defendant denies the allegations contained in paragraph 60 of the complaint.

61. The Defendant denies the allegations contained in paragraph 61 of the complaint.

62. The Defendant denies the allegations contained in paragraph 62 of the complaint.

63. The Defendant denies the allegations contained in paragraph 63 of the complaint.

64. The Defendant denies the allegations contained in paragraph 64 of the complaint.

65. The Defendant denies the allegations contained in paragraph 65 of the complaint.

66. The Defendant partially admits and partially deny the allegations contained in paragraph 66 of the complaint. The Defendant admits that the quantity and quality of the content on the website may attract more visitors, but denies the remaining allegations contained in paragraph 66.

67. The Defendant denies the allegations contained in paragraph 67 of the complaint.

68. The Defendant denies the allegations contained in paragraph 68 of the complaint.

69. The Defendant denies the allegations contained in paragraph 69 of the complaint.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

70. The Defendant denies the allegations contained in paragraph 70 of the complaint.

71. The Defendant denies the allegations contained in paragraph 71 of the complaint.

72. The Defendant denies the allegations contained in paragraph 72 of the complaint.

73. The Defendant denies the allegations contained in paragraph 73 of the complaint.

74. The Defendant denies the allegations contained in paragraph 74 of the complaint.

75. The Defendant denies the allegations contained in paragraph 75 of the complaint.

76. The Defendant denies the allegations contained in paragraph 76 of the complaint.

77. The Defendant denies the allegations contained in paragraph 77 of the complaint.

78. Paragraph 78 requires no answer but, to the extent that facts are alleged, this paragraph is denied.

79. The Defendant denies the allegations contained in paragraph 79 of the complaint.

80. The Defendant denies the allegations contained in paragraph 80 of the complaint.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

81. The Defendant denies the allegations contained in paragraph 81 of the complaint.

82. The Defendant denies the allegations contained in paragraph 82 of the complaint.

83. The Defendant denies the allegations contained in paragraph 83 of the complaint.

84. The Defendant denies the allegations contained in paragraph 84 of the complaint.

85. The Defendant denies the allegations contained in paragraph 85 of the complaint.

86. The Defendant denies the allegations contained in paragraph 86 of the complaint.

87. The Defendant denies the allegations contained in paragraph 87 of the complaint.

88. The Defendant denies the allegations contained in paragraph 88 of the complaint.

89. Paragraph 89 requires no answer but, to the extent that facts are alleged, this paragraph is denied.

90. The Defendant denies the allegations contained in paragraph 90 of the complaint.

91. The Defendant denies the allegations contained in paragraph 91 of the complaint.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

92. The Defendant denies the allegations contained in paragraph 92 of the complaint.

93. The Defendant denies the allegations contained in paragraph 93 of the complaint.

94. The Defendant denies the allegations contained in paragraph 94 of the complaint.

95. The Defendant denies the allegations contained in paragraph 95 of the complaint.

96. The Defendant denies the allegations contained in paragraph 96 of the complaint.

97. The Defendant denies the allegations contained in paragraph 97 of the complaint.

98. Paragraph 98 requires no answer but, to the extent that facts are alleged, this paragraph is denied.

99. The Defendant denies the allegations contained in paragraph 99 of the complaint.

100. The Defendant denies the allegations contained in paragraph 100 of the complaint. The bilateral agreement is real and legitimate. Mr. Feras Antoon is hiding behind different subsidiaries of companies, which is unusual for a porn website to have. There is no valid reason for this except to make it more difficult to bring a case against them. Mr. Feras Antoon is known in the media to be the CEO

of Mind Geek, but in his declaration he claimed to be an officer and director of 9219-1568 Quebec Inc., one of Mind Geek's subsidiaries.

The Defendant believes that Mr. Antoon is lying to the court and that he runs Mind Geek, the parent company of MG Premium. Mr. Feras Antoon has claimed to be the CEO of Mind Geek to the defendant, media, and government. In a virtual testimony before the Standing Committee on Access to Information, Privacy and Ethics of the Parliament of Canada on February 5, 2021, Mr. Feras Antoon introduced himself as the "chief executive officer of Entreprise MindGeek Canada." [Exhibit C].  A chief executive officer (CEO) is the highest-ranking executive of a company and acts as the company's public face and makes major corporate decisions.

The Defendant believes that Mr. Feras Antoon is lying to the court and trying to downplay his role in the company's business. The validity of the contract can be confirmed by checking Mr. Feras Antoon's financial statements or those of his partners, such as Bernd Bergmair, who owns a majority of Mind Geek, and David Tassillo, the COO of the company.

101. The Defendant denies the allegations contained in paragraph 101 of the complaint. On Exhibit D of the first amended complaint, the plaintiff is showing a DMCA notice received by Pornhub, one of the plaintiff's websites, and not by Google According to the information provided on Plaintiff's DMCA page at https://www.pornhub.com/information/dmca failure to comply with the requirements of Section 512(c)(3) of the DMCA may result in the notice not being

effective., it appears that Plaintiff has designed their website in a way that requires content owners to send a DMCA notice in order to have their content removed from the website. The Defendant asserts that this requirement may force copyright owners, including the Defendant, to send a DMCA notice to the Plaintiff's website in order to have their content removed.

102. The Defendant denies the allegations contained in paragraph 102 of the complaint.

103. The Defendant admits the allegations contained in paragraph 103 to the extent that there is a dispute as to whether US copyright law applies.

For the convenience of the Court, the Defendant, AMRIT KUMAR, d/b/a GOODPORN.TO has

included said First Amended Complaint as an exhibit ( exhibit A ) along with the additional supporting documents. Any

errors in the reproduction of the aforesaid Complaint is wholly unintentional.

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF</u>

A.  Plaintiff is not entitled to this relief.

B.  Plaintiff is not entitled to this relief.

C.  Plaintiff is not entitled to this relief.

D.  Plaintiff is not entitled to this relief.

E.  Plaintiff is not entitled to this relief.

F.  Plaintiff is not entitled to this relief.

G.  Plaintiff is not entitled to this relief.

H.  Plaintiff is not entitled to this relief.

I.  Plaintiff is not entitled to this relief.

J.  Plaintiff is not entitled to this relief.

K.  Plaintiff is not entitled to this relief.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

## SUMMARY OF DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT

1. The Defendant is an Indian national, living in India. The Defendant has never visited the United States.

2. The Defendant has full rights over the contents that Plaintiff is claiming infringement upon. The Plaintiff and Defendant have a contract and full ownership has been transferred to the Defendant.

3. The Plaintiff's copyright infringement claim is baseless.

4. The Plaintiff has sent enormous false DMCA takedown notices to Google and it cost the Defendant a large loss of search engine rank positions and the Defendant lost traffic to the website.

5. The Defendant's source of income from Goodporn.to is mostly through showing ads, so the false takedown notices and other pursuits from the Plaintiff have directly affected the website's revenue.

6. The Defendant website's ads being served by third party companies and these companies decide where the ads should be shown.

7. The Defendant website is not hosted inside United States.

8. The Defendant domain address is .TO which its domain extension of the island kingdom of Tonga and government of Tonga has authority over it.

9. The Plaintiff's source of information for Defendant website traffic is Similarweb, Similarweb.com only estimates the number of visitors to a website

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

and their guesses are not reliable. Furthermore, the origins of their signals and sources are not clearly disclosed, rendering their estimates questionable.

10. Defendant Amrit Kumar is not responsible for the actions of the other defendants.

11. The defendant's choice of CDN provider was not based on the location of the company providing the CDN. Cloudflare, a widely known and free CDN provider, was chosen solely due to its reputation and the fact that it was free. The defendant was not aware of the location of the CDN provider and did not consider it when making the selection. The defendant's decision to use Cloudflare was based solely on its reputation and the fact that it was free. Furthermore, the videos or image galleries that the plaintiff accuses the defendant of copyright infringement were not hosted on Cloudflare or using Cloudflare CDN.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

## **Affirmative Defenses**

1. It is respectfully submitted that this Court lacks jurisdiction over Defendant, who is an Indian national and has never visited the United States. Defendant does not have an office or any other physical presence within the United States, and has not engaged in any business or other activities within the United States. As such, Defendant is not subject to the jurisdiction of this Court.

2. It is respectfully submitted that the Plaintiff's complaint is baseless because the Plaintiff has transferred all of the allegedly infringing content to the Defendant. This transfer was made based on a bilateral agreement between the parties, a copy of which is attached as Exhibit B. As the Defendant now owns this content, it is impossible for the Defendant to infringe upon it. Thus, there are no grounds for this lawsuit.

3. It is respectfully submitted that the Plaintiff and its parent company, Mind Geek, have a history of disregarding the law and are currently facing multiple lawsuits involving child pornography and rape such as Serena Fleites et al v. MindGeek S.A.R.L. et al case no: 2:21-cv-04920. The Plaintiff's current actions, including the filing of this lawsuit and the attempt to hijack the Defendant's domain name, are a clear abuse of the US legal system. The Plaintiff has not honored the terms of the bilateral agreement and is attempting to use this lawsuit to halt the Defendant's business and appropriate its domain name. The Defendant is a competitor to both the Plaintiff's free and paid websites.

4. the Defendant asserts that the allegations made by the Plaintiff regarding the Defendant's aim for the US market are false. None of the third-party companies that serve ads on the Defendant's website are based in the United States. The fact that an ad may be viewed in the United States does not, by itself, grant jurisdiction to this court. Additionally, the Defendant is not responsible for serving the ads on its website and does not have control over where they may be shown. Instead, third-party companies manage the ads and may choose to show them in the United States or elsewhere. The Defendant also has a link on its website header to an Indian pornography website called "Hindi Porn" which is aimed at Indian visitors. Furthermore, the Defendant's highest number of visitors come from India, not the United States. If the court were to consider viewing an ad in the United States as sufficient to grant jurisdiction to this court, it would encompass every single website owner in the world.

5. Plaintiff's main opposition to the defendant's motion to dismiss for lack of jurisdiction referred to the ongoing case of Will Co. Ltd. v. Lee et al., in which the defendant was hosting his website in Utah, United States. However, in this case, the defendant is not hosting his website within the United States.

6. The plaintiff claims that the company that operates the ".TO" domain extension is based in California. However, the ".TO" extension is actually the country code top-level domain for the island kingdom of Tonga and the government of Tonga has authority over it.

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

7. The plaintiff has taken steps to restrict the defendant's access to legal counsel and representation. For instance, the plaintiff's agent, Jason Tucker, has made threats against the defendant's attorney in an attempt to terminate their representation of the defendant. As a result, one of the defendant's former lawyers (Casey McKay) terminated their contract with the defendant. These actions are intended to prevent the defendant from obtaining proper legal representation and effectively defend themselves [please see Exhibit D].

8. None of the parties in this case are from the United States. The Defendant is from India, while the plaintiff company has been registered in Cyprus. The ex-CEO of the plaintiff company, Feras Antoon, is Canadian and resides in Canada, and Bernd Bergmair, who owns a majority of the plaintiff company, is Austrian and resides in the UK. The only apparent connection to the United States in this case is the location of the plaintiff's counsel in California. This case is simply a waste of US taxpayer money in the interest of the plaintiff's pornographic company.

A non-redacted copy of the First Amended Complaint is attached hereto as "Exhibit A"

A non-redacted copy of the agreement contract with MG Premium is hereto attached as "Exhibit B"

A copy of the Feras Antoon testify to Canadian Parliment is attached hereto as "Exhibit C"

A copy of the former defendant's lawyer's chat screen is attached hereto as "Exhibit D".

Answer of Amrit Kumar d/b/a Goodporn.to to the first amended complaint

## **Demand for Relief**

WHEREFORE, Defendant respectfully requests that the Court:


    1. Dismiss the first amended complaint for lack of jurisdiction.

    2. Dismiss the first amended complaint for baseless claims of copyright infringement.

    3. Order the plaintiff to cease sending DMCA notices to Google regarding the defendant's website and to withdraw any such notices that have already been sent.

Dated:  January 3, 2023


           By: Amrit Kumar

           /s/ Amrit Kumar

           Amrit Kumar d/b/a GoodPorn.to

           Pro Se

## **CERTIFICATE OF SERVICE**

I certify that this answer has been served upon opposing counsel

Eric Bjorgum, Karish & Bjorgum

119 E. Union St., Suite B, Pasadena, CA 91103

213-785-8070

Eric.bjorgum@kp-ip.com


By email on January 3, 2023.




By: Amrit Kumar

/s/ Amrit Kumar

Amrit Kumar d/b/a GoodPorn.to

Pro Se

# Exhibit A

**KARISH & BJORUGM, PC**
A. ERIC BJORGUM (State Bar No. 198392)
Eric.bjorgum@kb-ip.com
MARC KARISH (State Bar No. 205440)
Marc.karish@kb-ip.com
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone:  (213) 785-8070
Facsimile:   (213) 995-5010

Attorneys for Plaintiff
MG PREMIUM LTD.

# UNITED STATES DISTRICT COURT
## IN AND FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MG PREMIUM LTD, a limited liability company organized under the laws of the Republic of Cyprus,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-20, d/b/a GOODPORN.TO<br><br>Defendants. | Case No.  2:21-cv-08533-MCS-KK<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**1.  COPYRIGHT INFRINGEMENT**<br>**2.  INDUCEMENT OF COPYRIGHT INFRINGEMENT**<br>**3.  VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**4.  DECLARATORY JUDGMENT REGARDING OWNERSHIP AND NON-INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff MG Premium Ltd (hereinafter referred to as "Plaintiff" or "MG Premium") by and through its counsel of record, pursuant to Fed.R.Civ.P. 15, files this First Amended Complaint against Amrit Kumar, Lizette Lundberg, Emilie Brunn, and John Does 4-20, d/b/a Goodporn.to (collectively hereinafter referred to as "Defendants").

## PRELIMINARY STATEMENT

1.      MG Premium is among the world's leading providers of premium adult entertainment content. By this lawsuit, MG Premium seeks to protect thousands of its copyrighted audiovisual works from blatant infringement by Defendants.

2.      The conduct that gives rise to this lawsuit is egregious and willful. Defendants own and operate websites engaged in the business of copying and distributing infringing audiovisual works. Under the guise of acting as a distributor of "user-generated content," Defendants in fact are directly and knowingly involved in the trafficking of tens of thousands of pirated works – including thousands of works owned by MG Premium. The Defendants are not "service providers" and are not entitled to any of the safe harbors afforded under Section 512 of the Digital Millennium Copyright Act ("DMCA") (17 U.S.C. § 512).  Rather, Defendants have produced a fraudulent contract claiming ownership of the works at issue, and have themselves either submitted DMCA notices or counternotices claiming ownership of the same works, submitted to the jurisdiction of the United States, and created an actual and substantial controversy.  Defendants do not even attempt to comply with their obligations under the DMCA. Instead, Defendants systematically refuse to comply with proper and compliant DMCA takedown notices

3.      Defendants' actions are causing serious harm to MG Premium and its business. Defendants' infringing conduct must stop immediately. Because Defendants have not complied with demands to cease and desist, MG Premium is now

constrained to come before this Court seeking injunctive and monetary relief, as well as a declaration of rights, as well as a declaration of rights.

## JURISDICTION AND VENUE

4.     This is a civil action seeking damages and injunctive and declaratory relief under the Copyright Act, 17 U.S.C. § 101 *et seq*.

5.     This Court has subject matter jurisdiction over MG Premium's claims for copyright infringement, declaratory relief and violation of the Digital Millennium Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     Defendants Amrit Kumar, Lizette Lundberg, and Emilie Brunn are purportedly residents of India, Switzerland, and Belgium, respectively.

7.     Defendant John Does 4-20 are currently unknown individual(s) and/or entity(ies) that own and operate two websites, one located at the uniform resource locator ("URL") https://GoodPorn.to (the "GoodPorn Website").

8.     The GoodPorn Website is operated for the purpose of willful, large-scale copyright infringement

9.     Defendants knowingly and purposefully market to and target the entire United States, including residents of this District, through the GoodPorn Website.

10.     Based on a September 2021 website analysis prepared by Similarweb.com, an industry-trusted website analytics company, (the "SimilarWeb Report"), for the three-month period ending August 2021, the GoodPorn Website averaged approximately 5.75 million monthly visitors. Of these visitors, those from the United States made up the largest market, at 23.73%, with the next largest market being visitors from India, at 10.6%.

11.     The SimilarWeb Report further shows that for the three-month period ending August 2021, Internet traffic driven to the GoodPorn Website from social

media platforms came predominantly from United States entities, such as Youtube, LLC, a California-based company, which accounted for 44.94% of such traffic. Further, Facebook, Inc., a California-based company, accounted for 7.42% of such traffic, and Reddit, Inc., another California-based company, accounted for 33.10% of such traffic.

12.    Defendants utilize a content delivery network ("CDN") owned by Cloudflare, Inc., which is a company based in San Francisco, California.

13.    Defendants utilize a domain name registrar that operates in California on behalf of the government of Tonga.

14.    The GoodPorn Website displays geo-targeted pop-up advertisement to U.S. users, meaning the operators of the website can determine the general locale of each user and displays advertisements targeted to those locales.

15.    Defendants' use of U.S. vendors for domain name servers, geo-targeted ads, and other services illustrate that Defendants are expressly aiming their website and business at the United States market so that there is personal jurisdiction over Defendants.  It was recently clarified by the Ninth Circuit in *Will Co., Ltd. v. KA Lee*, Case No. 21-35617 (9th Cir. August 31, 2022) that similar contacts are sufficient to confer personal jurisdiction in the United States.

16.    This Court has personal jurisdiction over the Defendants, who have engaged in business activities in and directed to the United States, and any alien defendant is subject to jurisdiction in any federal district in the United States. See 28 U.S.C. 1391 ("An alien may be sued in any district.") See also Fed. R. Civ. P. 4(k)(2).

17.    Defendants are subject to service of process pursuant to California's "Long Arm Statute" (Cal. Code Civ. Proc § 410.10), and Fed.R.Civ.P. 4(e).

18.     Further, on information and belief, Defendants are not based in the United States, and any alien defendant is subject to jurisdiction in any federal district in the United States. See 28 U.S.C. 1391 ("An alien may be sued in any district.") See also Fed. R. Civ. P. 4(k)(2).

19.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 17 U.S.C. § 101 et seq., 28 U.S.C. §1331 and 28 U.S.C. §1338.

20.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and/or (c).

## **PARTIES**

21.     MG Premium is, and at all relevant times was, a private limited liability company organized under the laws of the Republic of Cyprus, and has its head office at 195-197 Old Nicosia-Limassol Road, Block 1 Dali Industrial Zone, Cyprus 2540. MG Premium is the holder of the copyrights associated with many well-known brands of adult content, including "Reality Kings", "Brazzers", MOFOS", "Babes.com", and "Twistys" among others.

22.     Defendant Amrit Kumar claims to be an individual living in Mumbai, India.  He appeared in this matter after being served by email and is substituted in to replace the first John Doe.

23.     Defendant Lizette Lundberg is, on information and belief, an individual living in Austria, Switzerland.  Lundberg has served a notice under the Digital Millennium Copyright Act claiming to own copyrighted material owned by Plaintiff. When Lundberg made that claim, Lundberg submitted to jurisdiction in the Northern District of California.

22.     Defendant Emilie Brunn is, on information and belief, an individual living in Beuningen, NH, Netherland.  Brunn has served a counternotice under the

Digital Millennium Copyright Act claiming to own copyrighted material owned by Plaintiff.  When Brunn made that claim, Brunn submitted to jurisdiction in the Northern District of California.

23.     Defendant John Does 4-20 are currently unknown individual(s) and/or entity(ies) that own and operate two websites, one located at the uniform resource locator ("URL") https://GoodPorn.to (the "GoodPorn Website").

24.     MG Premium is informed and believes, and on that basis alleges, that Does 4 through 20 either (a) directly performed the acts alleged herein, (b) were acting as the agents, principals, alter egos, employees, or representatives of the owners and operators of the GoodPorn Website, and/or (c) otherwise participated in the acts alleged herein with the owners and operators of the GoodPorn Website. Accordingly, Does 4 through 20 each are liable for all the acts alleged herein because they were the cause in fact and proximate cause of all injuries suffered by MG Premium as alleged herein. MG Premium will amend the complaint to state the true names of Does 4 through 20 when their identities are discovered.

## **FACTS**

25.     MG Premium owns and operates one of the largest portfolios of premium adult-oriented audiovisual content in the world. MG Premium routinely registers copyrights in its contents with the U.S. Copyright Office.

26.     A schedule of the MG Premium copyrighted works at issue in this case thus far, which have been registered with the U.S. Copyright Office, is attached hereto as Exhibit A (the "Subject Works").

27.     MG Premium operates websites on which it displays its content its content for valuable consideration, including for display on various third-party adult entertainment websites and channels.

28.     MG Premium has never authorized or given consent to Defendants to use their copyrighted works in the manner displayed or exploited by Defendants and as complained therein.

29.     The GoodPorn Website is a pirate website, displaying copyrighted adult entertainment content without authorization or license. The GoodPorn Website is operated so that purported internet users desiring to post videos on the GoodPorn Website must upload videos to the GoodPorn Website.

30.      In order to gain access to the touted "highly interactive" website functions, users of the GoodPorn Website must sign up for an account. Other internet users can simply watch videos on the GoodPorn Website for free without an account.

31.     The site allows any user, regardless of age or location, the ability to download multiple versions of each video, including high-definition full versions of Plaintiff's infringing content.

32.     The site has created studio-specific channels including for Plaintiff's works. The site markets on its front page that users can, "Watch or download thousands of porn videos absolutely free from channel/networks such as **Brazzers, Reality Kings** and **Fakehub**, You can find more on **channels** section." (Emphasis in original.) Brazzers and Reality Kings are owned by Plaintiff and charge to view of its full-length content.

33.     The sign-up process for the GoodPorn Website requires entry of a username, password, email address, and agreement to Terms of Use and a Privacy Policy.

34.     The entry of an email address during the GoodPorn Website sign-up process does *not* result in an email verification for the user.

35.     Once a GoodPorn Website user has signed up, the user can, among other things, post videos for display on the site.

FIRST AMENDED COMPLAINT

36.     The GoodPorn Website monetizes copyright infringement via advertising banners visible on the site. Advertising was and is the sole manner in which Defendants make money on the GoodPorn Website.

37.     In addition to static banner advertisement, upon viewing videos on the GoodPorn Website, the user will be periodically shown pop-up advertisements. A "pop-up" advertisement is an ad that seemingly randomly appears on the user's screen.

38.     The pop-up advertisements on the GoodPorn Website are geo-targeted, meaning the operators of the GoodPorn Website have the means to determine the general locale of each user and display advertisements consistent and/or specific to the locale.

39.     Videos on the GoodPorn Website may be shared on other sites, in addition to the user being provided with links for posting on or to any social media site including, but not limited to, Facebook, Twitter, Google or via email to anyone. Such functionality makes it impossible to know how often and where an unlicensed copyrighted video has been posted and displayed illegally as a direct result of Defendants unlawful display.

40.     The GoodPorn Website fails to fulfill the requisite conditions precedent to qualify for the safe harbor provisions of the DMCA. Specifically, the GoodPorn Website does not have an appointed registered DMCA Agent. Further, Defendants fail to honor take-down notices sent to the GoodPorn Website and have failed to implement a reasonable repeat infringer policy.

41.     MG Premium's agents routinely police websites to identify infringement of MG Premium's copyrighted works. In the course of doing so, MG Premium's agents discovered that many MG Premium's copyrighted works were being made

available, in full, to the public on the GoodPorn Website for free and without license or authorization from MG Premium.

42.   For instance, it was discovered that between November, 2020 and September, 2021, the GoodPorn Website displayed 1,438 of Plaintiff's copyright registered works on over 1,438 separate and distinct URLs - each a part of the GoodPorn Website. These copyrighted works at issue (the "Subject Works") are listed in Exhibit A hereto. The infringing works from GoodPorn.com are identical, and the infringing URLs are listed in Exhibit B. Defendants have no authority or license to display or distribute any portion of Plaintiff's copyrighted works in the manner displayed or exploited by Defendants and as complained therein.

43.   For the unauthorized videos, MG Premium sent a series of takedown notices to the GoodPorn Website, pursuant to 17 U.S.C. § 512(c).  Collectively, MG Premium has sent up to nine takedown notices referencing thousands of infringing URLs to the GoodPorn Website.

44.    After the initial complaint in this matter was filed, Defendant Amrit Kumar appeared and filed a motion to dismiss for lack of personal jurisdiction and on the doctrine of forum non conveniens.  That motion was denied without prejudice by the Court because Kumar did not meet and confer before filing.  He was ordered to refile and to strictly comply with the requirements of Rule 7-3.

45.   As part of his motion, Kumar submitted documents purporting to be a contract transferring all of the Plaintiff's intellectual property to Kumar.  Plaintiff denies the contract is genuine. For several reasons, Kumar filed another motion to dismiss, which is set for a hearing on September 26, 2023.

46.   Or about August 2, 2022, Kumar served takedown notices under the Digital Millennium Copyright Act claiming that plaintiff's own website was pirating Kumar's works.

47.     Of the users that posted MG Premium's copyrighted works on GoodPorn.to, based upon the number of take-down notices sent, many ought to be classified as repeat infringers under any reasonable repeat infringement policy. Defendants do not have a stated repeat infringer policy, and none of the users were terminated by Defendants.

48.     Upon information and belief, Defendants have actual knowledge and clear notice of the infringement of Plaintiff's titles. The infringement is clear and obvious even to the most naïve observer. Plaintiff's copyrighted works are indexed, displayed and distributed on the GoodPorn Website through Defendants and the Doe Defendants acting in concert. Plaintiff's and other major producers' trademarks are used to index infringing material along with no obfuscation of watermarks and other identifiers which is evidence of knowledge and intent.

49.     By virtue of the conduct alleged herein, Defendants knowingly promote, participate in, facilitate, assist, enable, materially contribute to, encourage, and induce copyright infringement, and thereby have infringed, secondarily infringed, and induced infringement by others, the copyrights in Plaintiffs' copyrighted work.

50.     Defendants, either jointly, severally, actually, constructively, and with or without direct concert with one another, deprived Plaintiffs of the lawful monetary rewards that accompany its rights in the copyrighted works.  Defendants' disregard for copyright and trademark laws threatens Plaintiff's business.

51.     Defendants intentionally, knowingly, negligently, or through willful blindness avoided reasonable precautions to deter rampant copyright infringement on their website.

52.     Defendants' acts and omissions allow them to profit from their infringement while imposing the burden of monitoring Defendants' website onto

1    copyright holders, without sufficient means to prevent continued and unabated

2    infringement.

3        53.    On information and belief, each of the infringed works was registered

4    with the U.S. Copyright Office before the alleged infringement began.

5        54.    On information and belief, Defendants have the right and ability to

6    supervise the conduct of one or all of each other's infringing activities and have a

7    direct financial interest in one or all of each other's infringing activities.

8        55.    On information and belief, Defendants had knowledge of the infringing

9    conduct of one or all of each other and materially contributed to, induced, or caused

10   the infringing activity of one or all of each other.

11

12                         **FIRST CAUSE OF ACTION**
                    **Copyright Infringement – 17 U.S.C. §§ 101 *et. seq.***
13                         **Against All Defendants**

14       56.    MG Premium repeats, re-alleges, and incorporates by reference each

15   preceding allegation set forth herein.

16       57.    MG Premium served DMCA takedown notices for the Subject Works.

17   Defendants systematically failed to take any action to remove content identified in

18   Plaintiff's DMCA notices.

19       58.    MG Premium is the owner of valid and registered copyrights in the

20   Subject Works.

21       59.    MG Premium registered its copyrights with the United States Copyright

22   Office.

23       60.    Defendants have infringed, and are continuing to infringe, MG

24   Premium's copyrights by reproducing, adapting, distributing, and/or publicly

25   displaying and authorizing others to reproduce, adapt, distribute, and/or publicly

26   display copyrighted portions and elements of the Subject Works, and/or the Subject

Works in their entireties, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*.

61.    Defendants did not have the authority or license to copy and/or display the Subject Works.

62.    MG Premium has never authorized or given consent to Defendants to use the Subject Works in the manner displayed and exploited by Defendants.

63.    Defendants knew or reasonably should have known they did not have permission to exploit the Subject Works on the GoodPorn Website and further knew or should have known their acts constituted copyright infringement.

64.    Defendants' acts of infringement are willful, in disregard of, and with indifference to the manner displayed and exploited by Defendants.

65.    Defendants engaged in intentional, knowing, negligent, or willfully blind conduct sufficient to demonstrate they engaged actively in the improper collection and distribution of Plaintiffs' copyrighted works.

66.    The quantity and quality of copyright files available to users increased the attractiveness of Defendants' service to its customers, increased its user base, and increased its advertising revenue.

67.    On information and belief, Defendants actively uploaded pirated copyrighted files and/or embedded code, enabling users of the GoodPorn Website and to view copyrighted videos and images for free.

68.    Defendants controlled the illegally copied files originally owned by MG Premium and determined which files remained for further display and distribution.

69.    Defendants never implemented or enforced a "repeat infringer" policy.

70.     Defendants either were aware, actually or constructively, should have been aware, or were willfully blind that pirated copyrighted materials comprised the most popular videos on the GoodPorn Website.

71.     Defendants, through the GoodPorn Website, affirmatively and willfully accommodated Internet traffic generated by the illegal acts.

72.     Defendants' conduct was willful within the meaning of 17 U.S.C. § 101, *et seq*.  At a minimum, Defendants acted with willful blindness and reckless disregard of MG Premium's registered copyrights.

73.     Because of their wrongful conduct, Defendants are liable to MG Premium for copyright infringement. See 17 U.S.C. §501. Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

74.     The law permits Plaintiff to recover damages, including their lost profits and Defendants' direct and indirect profits, according to the statute. 17 U.S.C. §504. Alternatively, the law permits Plaintiff to recover statutory damages. 17 U.S.C. §504(c).

75.     Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. §504(c) (2). Attorney's fees are available pursuant to 17 U.S.C. §505.

76.     The law permits Plaintiff injunctive relief. 17 U.S.C. §502. Further, the law permits a Court Order impounding all infringing materials. 17 U.S.C. §503.

77.     Because of the Defendants' acts and conduct, MG Premium has sustained and will continue to sustain a substantial, immediate, and irreparable injury, for which there is not an adequate remedy at law. Unless enjoined and restrained by the Court, Defendants will continue to infringe MG Premium's

rights in the Subject Works. MG Premium is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## SECOND CAUSE OF ACTION
### Inducement of Copyright Infringement
### Against All Defendants

78.     MG Premium repeats, re-alleges, and incorporates by reference each preceding allegation set forth herein.

79.     MG Premium served DMCA takedown notices for the Subject Works. Defendants systematically failed to take any action to remove content identified in Plaintiff's DMCA notices.

80.     Defendants designed and/or distributed technology and/or devices and/or induced individuals to use this technology to promote the use of infringed and copyrighted material. As a direct and proximate result of the Defendants' inducement, individuals infringed MG Premium's copyrighted works. These individuals reproduced, distributed, and publicly disseminated MG Premium's copyrighted works through the Defendants' website.

81.     On information and belief, Defendants have encouraged the illegal uploading and downloading of MG Premium's copyrighted works, thus inducing the unauthorized reproduction, adaptation, public display, and/or distribution of copies of MG Premium's copyrighted works, and thus to the direct infringement of MG Premium's copyrighted works.

82.     Defendants' actions constitute inducing copyright infringement of MG Premium's copyrights and exclusive rights under copyright in MG Premium's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

83.    The infringement of MG Premium's rights in and to each of the MG Premium's copyrighted works constituted a separate and distinct infringement.

84.    The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to MG Premium's rights.

85.    As a direct and proximate result of the infringements by Defendants of MG Premium's copyrights and exclusive rights under copyright in MG Premium's copyrighted works, MG Premium is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

86.    Alternatively, MG Premium is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

87.    MG Premium is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

88.    Because of the Defendants' acts and conduct, MG Premium has sustained and will continue to sustain a substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by the Court, Defendants will continue to infringe MG Premium's rights in the Subject Works. MG Premium is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## THIRD CAUSE OF ACTION
### Vicarious and/or Contributory Copyright Infringement
### Against All Defendants

89.     Plaintiff repeats, re-alleges, and incorporates by reference as though fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

90.     MG Premium served DMCA takedown notices for the Subject Works. Defendants systematically failed to take any action to remove content identified in Plaintiff's DMCA notices.

91.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, knowingly induced, participated in, aided and abetted, and resultantly profited from the illegal reproduction, distribution, display, and/or creation of derivative works based on the Subject Works as alleged herein.

92.     Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

93.     Plaintiff is informed and believes and on that basis alleges that Defendants, and each of them, are contributory infringers because each knew or had reason to know of the infringing activity and that Defendants intentionally and materially contributed to the infringing activity.

94.     By reason of the Defendants', and each of their, acts of contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer substantial damages to its business in an amount to be established at trial.

95.     By reason of the Defendants' and each of their acts of contributory and/or vicarious infringement as alleged above, Plaintiff has suffered and will continue to suffer general and special damages to its business in an amount to be established at trial.

96.     Due to Defendants' acts of contributory and/or vicarious copyright infringement, Defendants, and each of them, have obtained direct and indirect profits they would otherwise not have realized but for their infringement of the Subject Works. As such, Plaintiff is entitled to disgorgement of Defendants' profits, directly and indirectly, attributable to Defendants' infringement of the Subject Works in an amount to be established at trial.

97.     Plaintiff is informed and believes and thereupon alleges that Defendants, and each of them, have continued to infringe Plaintiff's copyright rights. Therefore, Defendants' acts of copyright infringement as alleged above were, and continue to be, willful, intentional, and malicious, subjecting Defendants, and each of them, to liability, therefore. Further, Defendants, and each of them, willfully and intentionally misappropriated, palmed-off, and/or infringed Plaintiff's Subject Works which renders Defendants, and each of them, liable for damages as described herein.

## FOURTH CAUSE OF ACTION
### Declaratory Relief of Ownership and Non-Infringement

98.     Plaintiff repeats, re-alleges, and incorporates by reference as though fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

99.     Plaintiff is the owner and registrant of the Copyrighted material identified in Exhibit A hereto, among thousands of other works and related registrations.

100.   Defendant Kumar has made a claim of ownership of Plaintiff's work and infringement by Plaintiff. First, he claims ownership over all of Plaintiff's works via a contract that is, on information and belief, fraudulent.  The fraudulent contract is attached hereto as Exhibit C and incorporated herein by reference.  The alleged signatory for Plaintiff, Feras Antoon, has never held any position with Plaintiff.

101.   Next, in August 2022, Kumar sent a takedown notice to Google under the Digital Millennium Copyright Act identifying certain Plaintiff works. He alleged ownership and copying of the Plaintiff's registered works.  The DMCA notice is attached hereto as Exhibit D and is incorporated herein by reference.

102.   Defendants Brunn and Lundberg have served DMCA counternotices alleging ownership of Plaintiff's registered works.  These counternotices concede jurisdiction in the Northern District of California. They are attached hereto as Exhibit E and incorporated herein by reference.  On information and belief, Brunn and Lundberg are operating as agents of Kumar.

103.   There is an actual and substantial controversy between Plaintiff and Kumar, Lundberg, and Brunn arising under federal copyright law, 17 U.S.C. §§ 101 et seq.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MG Premium Ltd prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award MG Premium relief including, but not limited to, an Order:

A.   Preliminarily and permanently enjoining Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any

or all persons acting in concert or participation with any of them, or under their direction or control, from any of the following activities:

      (1)    Hosting, linking to, distributing, reproducing, copying, downloading, uploading, making available for download, indexing, displaying, exhibiting, communicating to the public, streaming, transmitting, or otherwise exploiting or making any use of any of MG Premium's copyrighted works, including the Subject Works, or any portion(s) thereof in any form;

      (2)    Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing, whether directly or indirectly, any user or other third party (i) to host, link to, distribute, reproduce, copy, download, upload, make available for download, index, display, exhibit, communicate to the public, stream, transmit, or otherwise exploit or make any use of MG Premium's copyrighted works, including the Subject Works, or portion(s) thereof; or (ii) to make available any of MG Premium's copyrighted works, including the Subject Works, for hosting, linking to, distributing, reproducing, copying, downloading, uploading, making available for download, indexing, displaying, exhibiting, communicating to the public, streaming, transmitting, or other exploitation or use;

      (3)    Using, operating, maintaining, distributing, or supporting any computer server, website, software, domain name, email address, social media account, bank account, or payment processing system in connection with the hosting, linking to, distributing, reproducing, copying, downloading, uploading, making available for download, indexing, displaying, exhibiting, communicating to the public,

FIRST AMENDED COMPLAINT

streaming, transmitting, or other exploitation or use of any of MG Premium's copyrighted works, including the Subject Works;

(4)    Enabling, facilitating, permitting, assisting, soliciting, encouraging or inducing, whether directly or indirectly, any user or other third party to visit any website, including but not limited to any website operated by Defendants, that hosts, links to, distributes, reproduces, copies, downloads, uploads, makes available for download, indexes, displays, exhibits, communicates to the public, streams, transmits, or otherwise exploits or makes any use of MG Premium's copyrighted works, including the Subject Works, or portion(s) thereof;

(5)    Transferring or performing any function that results in the transfer of the registration of the domain name of the GoodPorn Website to any other registrant or registrar; and

(6)    Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in this Paragraph.

B.    Requiring Defendants and their officers, servants, employees, agents, and any persons who are, or on notice and upon continued provision of services would be, in active concert or participation with them, including but not limited to the domain name registrars and registries administering, holding, listing, or otherwise having control over the domain name GoodPorn.to and any other domain name used in conjunction with Defendant's infringing activities, to transfer such domain name to MG Premium's ownership and control, including, *inter alia*, by changing the registrar of record to the registrar of MG Premium's choosing, unless MG Premium requests that such domain name be held and/or released rather than transferred.

C.      Requiring Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons or entity acting in concert or participation with any of them, or under their direction or control, including any internet search engines, web hosting and Internet service providers, domain name registrars, domain name registries and other service or software providers, within five (5) business days from the issuance of this Order:

> (1)    To block or use reasonable efforts to attempt to block access by United States users of the GoodPorn Website by blocking or attempting to block access to all domains, subdomains, URLs, and/or IP Addresses that has as its sole or predominant purpose to enable to facilitate access to the GoodPorn Website;

> (2)    To re-route all domains, subdomains, URLs, and/or IP Addresses that provides access to each and every URL available from each of the GoodPorn Website and their domains and subdomains.

D.      That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

E.      That the Court enter a judgment declaring that Plaintiff is the owner of all of the MG Premium Works, and that Defendants have no rights by virtue of the purported contract, that Plaintiff does not infringe Defendants' rights,  and that  the Court award plaintiff its costs, reasonable attorneys' fees and such other and further relief as the Court deems just and proper

  F. That Plaintiff be awarded statutory damages in an amount to be determined at trial for all infringing activities, or actual damages including Plaintiff's damages and lost profits, Defendants' profit;

  G. That Defendants be ordered to account to Plaintiff for all profits, gains and advantages that they have realized as a consequence of their unauthorized use of Plaintiff's copyrighted works;

  H. That Plaintiff be awarded enhanced damages and attorney's fees;

  I. That Plaintiff be awarded pre-judgment and post-judgment interest;

  J. That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

  K. That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

Dated: September 9, 2022   KARISH & BJORGUM, PC

         By:

         _____

         A. Eric Bjorgum
         Attorneys for Plaintiff
         MG Premium Ltd.

1

## **REQUEST FOR JURY TRIAL**

2

3          Pursuant to Fed.R.Civ.P. 38(b), Plaintiffs hereby request a trial by jury of all

4    issues raised by the Complaint which are properly triable to a jury.

5

6      Dated: September 9, 2022            KARISH & BJORGUM, PC

7

8

9

10                                        By: _____

11

12                                         A. Eric Bjorgum
                                           Karish & Bjorgum, PC
13                                         Attorneys for Plaintiff MG Premium

14

15

16

17

18

19

20

21

22

23

24

25

26

# Exhibit B

**BILATERAL AGREEMENT ON THE TRANSFER OF RIGHTS**

**Dated : 04/25/2019**

This agreement dated 04/25/2019 (herein after referred as Bilateral Agreement) shall take effect on and from the date of 04/25/2019 to transfer the right, along with ownership, to advocate, sell, publish, display & promote adult contents, stories, clips, jokes, pictures & videos (herein after referred as Adult Contents) is entered into by and between the following parties :

**MG PREMIUM LTD,**  a company incorporated under the Companies Act, having their Registered address at BLOCK 1, Dali Industrial Area, 195-197 Palaios Dromos Lefkosia - Lemesou Dali, 2540 Cyprus, herein referred as **Owner/Transferor**;

**AND**

**Goodporn.to,** a website having its Registered address at 205, Archbishop Makarios Avenue, Limassol, 3030 Cyprus, herein after referred as **Publisher/Transferee.**

**WHEREAS**, the Owner/Transferor, in order to meet the need of its business development proposes to transfer to Publisher/Transferee the copyrights along with ownership of the Adult contents, Stories, Pictures, Videos, Jokes, Clips etc.

which are developed and will be developed by Owner/Transferor. **WHEREAS,** Owner/Transferor shall promise & bind itself to transfer to Publisher/Transferee the Adult Contents & its copyrights along with Ownership from time to time which are developed or prepared by the Owner/Transferor during the continuance of this Bilateral Agreement. **WHEREAS,** Publisher/Transferee agree to accept such copyrights along with ownership at the prices as determined by both parties and shall promise to bind itself to accept the Adult Contents within the provisions of this Bilateral Agreement on time as and when required by the Publisher/Transferee.

THEREFORE, Owner/Transferor & Publisher/Transferee, through friendly negotiation and pursuant to the Copyright Law of the country where this Bilateral Agreement is executed and related laws and regulations, have hereby reached this Bilateral Agreement for both parties to comply with.

## TERMS & CONDITIONS

The terms & conditions hereby agreed between the parties are as under :

1. **Description of work**:   It is hereby agreed between the parties that, on and from the date on which this Bilateral Agreement takes effect, Owner/Transferor will transfer to Publisher/Transferee all the copyrights along with ownership ("Transferred Copyrights along with Ownership") of the Adult Stories, Pictures, Clips, Videos and other contents. The Adult Contents are developed and owned by Owner/Transferor, while

Publisher/Transferee will, in its own name through its website namely "Goodporn.to" and "Goodporn.se", advocate, publish, sell, display and promote the said Adult Contents. The Publisher/Transferee in carrying out the activities of advocating, selling, publishing, displaying and promoting will use trademarks and logos related to the Adult Contents. It is agreed between the parties that the Publisher/Transferee shall be the lawful owner of Adult Contents transferred by the Owner/Transferor. Once the Adult Content developed by the Owner/Transferor, it shall transfer the Adult Contents to the Publisher/Transferee and this process will run till 1st Day of December, 2050. Therefore, till 1st Day of December, 2050, the Adult Contents which are already developed and will be developed by Owner/Transferor, shall be lawfully acquire and owned by the Publisher/Transferee.

2.  **Grant of Rights:** It is hereby agreed between the parties that, on and from the date on which this Bilateral Agreement takes effect, the Publisher/Transferee shall have all the rights to advocate, sell, publish, display & promote the Adult Contents through any form of Media whether it is electronic media, print media or internet. Further, it is agreed between both the parties that, on and from the date on which this Bilateral Agreement takes effect, the Publisher/Transferee shall have all the rights to advocate, sell, publish, display & promote the Adult Contents into territory of every country in the World. Lastly, it is agreed

between the parties that, on and from the date on which this Bilateral Agreement takes effect, the Publisher/Transferee shall enjoy these absolute rights to advocate, sell, publish, display & promote the Adult Contents till 1st Day of December, 2050.

3. **Delivery of Adult Contents:** It is agreed between the parties that the Owner/Transferor shall handover all the rights of ownership and enjoyment on the Adult Contents developed by the Owner/Transferor from the date of taking effect of this agreement and till 1st Day of December, 2050. It is promised by the Owner/Transferor owns the unlimited right to transfer and the transferred Copyrights are not subject to any third-party mortgage, pledge, arrestment, freezing, etc. that may limit the obligations and rights of Publisher/Transferee.

4. **Indemnity:** It is agreed between the parties that, on and from the date on which this Bilateral Agreement takes effect, if any of the transferred Copyrights infringe on any third-party right, the Owner/Transferor shall be fully responsible for it and compensate Publisher/Transferee for all the losses and expenses (including but not limited to damages, legal costs, lawyer's fees) sustained by Publisher/Transferee as a result of the infringement. Further, it is agreed between the parties that Owner/Transferor shall not advocate, sell, publish, display & promote the Adult Contents developed and prepared by it. The rights of advocating, selling, publishing, displaying & promoting are available only to the

Publisher/Transferee.

5. **Payment :** It is agreed between the parties that the total sale Consideration will be made in crypto currency Monero for the period of subsisting of this Bilateral agreement, starting on and from the date on which this Bilateral Agreement take effect and ending on the 1st Day of December, 2050, for handing over the Adult Contents time to time. The Publisher/Transferee had already paid to the Owner/Transferor consideration for an amount of Twenty five Million USD in crypto currency Monero at rate of 65.4 USD per Monero coin. It is agreed between the parties that the Owner/Transferor shall first transfer the Adult Contents to the Publisher/Transferee and then raise invoices/bills before the Publisher/Transferee. The Publisher/Transferee shall made payment within 30 days starting from the date of receiving the invoices/bills by the Publisher/Transferee which were raised and sent by the Owner/Transferor. It is pertinent to mention here that Publisher/Transferee shall not pay any extra money for any other license, support or service provided by Owner/Transferor herein under. It is further agreed between the parties that the Owner/Transferor shall bear all the taxes and all related fees stipulated by the government for the revenues generated herein under.

6. **Revised Editions:** It is agreed between the parties that the Owner/Transferor shall hand over the revised editions of the Adult

Contents timely in favour of Publisher/Transferee. The Publisher/Transferee shall be the owner of Revised Editions of Adult Contents and shall have all the rights to advocate, sell, publish, display & promote these revised editions.

7. **Modification:** It is agreed between the parties that the Publisher/Transferee can modify the Adult Contents according to its own requirements. The Owner/Transferor shall relinquish all his rights of modification in favour of Publisher/Transferee. The Publisher/Transferee shall have all the rights of ownership on the Adult Contents once transferred by the Owner/Transferor.

8. **Confidentiality:** It is agreed between the parties that both party shall keep confidential all the confidential information obtained from each other during the process of concluding and performing this Bilateral Agreement including but not limited to the Adult Contents, business secrets of each other. Unless otherwise required by the law applicable to the parties, by the government authority or by Court of law, neither party, without the written consent from the other party shall disclose any of the above Confidential information to any organisation, company or individual (except employees who need to access related information for the purpose of executing this Bilateral Agreement). It is pertinent to mention here that the obligation of either party under this Clause (Clause 9) will valid during the term of this Bilateral Agreement and continue to

bind the parties after termination hereof.

9. **Termination:** It is agreed between the parties that if the Owner/Transferor terminates this Bilateral Agreement, he shall be liable to pay penalty for an amount equal to the total consideration Thirty Five Million USD agreed under this Bilateral Agreement along with the rate of interest at the rate of 25% per annum. If the Publisher/Transferee fails to make the payment as per the invoices/bills raised by the Owner/Transferor, the Publisher/Transferee shall be liable to pay the amount of invoice along with the rate of interest at the rate of 25% per annum.

10. **Breach of terms of this Bilateral Agreement:** It is agreed between the parties that if any of the parties commit breach of any of the terms of this Bilateral Agreement, such party shall be liable to pay an amount equal to Ten Million USD in addition to all other penalties stipulated under this Bilateral agreement.

11. **Execution of this Bilateral Agreement & applicable laws:** This Bilateral Agreement shall be executed and interpreted in compliance with the applicable laws and regulations of India. Any dispute arising from execution, validity or performance of or in relation to this Bilateral Agreement shall be solved by the parties through friendly negotiations.

Where negotiations fail to solve the dispute, the aggrieved party can file his claim before the Court. It is pertinent to mention here that during the pendency of the dispute before the court, both the parties shall continue to perform and exercise the duties and rights as agreed under this Bilateral Agreement.

12. **Jurisdiction of the Court:** It is agreed between the parties that the Court at New Delhi, India shall have jurisdiction for adjudication of all the matters arising in connection with this Bilateral Agreement.

13. **General Provisions :**

13.1 This Bilateral Agreement will take effect on the date first above written after being signed by both the parties or by their legal representative and shall affixed the seal of the parties.

13.2 That this Bilateral Agreement constitutes the complete agreement for the subject matter i.e. Adult Content involved in this Agreement and replaces any and all previous written or oral agreements or promises made by both parties for this subject matter. No modification of, supplement or amendment to this Agreement will be effective before it is officially signed by the legally authorized representatives of both parties hereto.

13.3 If any provision of this Bilateral Agreement is determined invalid pursuant to any applicable law or regulation, the invalidity of the said provision will not affect the validity of other provisions herein.

Both parties shall try to negotiate and reach a valid provision closest to the intention of the invalid provision and use it to replace the invalid provision.

13.4 If either party hereto fails to implement any provision hereunder or exercise any of its rights hereunder, this failure shall not constitute any waiver for any other provision herein in the future.

13.5 All the notices or other correspondences required hereunder shall be made in writing and be delivered via registered mail, express delivery or personal service. If any notice or correspondence is delivered via registered mail, the time indicated on the return receipt shall be regarded as the date of delivery; if the notice or correspondence is delivered via express delivery, the date on which the recipient signs for the express delivery shall be regarded as the date of delivery; if the notice or correspondence is delivered via personal service, the date of actual receipt shall be regarded as the date of delivery.

13.6 This Bilateral Agreement is executed in duplicate with each party holding one and shall have the same legal effect.

**First Party/Owner/Transferor**

Legal Entity Name: MG P_EMIUM LTD

Signature:

Name: Feras Antoon

Title:  CEO

**Second Party/ Publisher/Transferee**

Legal Entity Name: Goodporn.to AKA Goodporn.se

Signature:

Name: Amrit Kumar

Title:  COO

# Exhibit C

Today we have three witnesses at our committee. From MindGeek, we have Feras Antoon, chief executive officer; David Tassillo, chief operating officer; and Corey Urman, vice-president, video-sharing platform.

I'd like to remind the witnesses today that any witness before a parliamentary committee has a duty to tell the whole truth, and any failure to do so might result in a finding of contempt of Parliament. I'll remind all members of that.

Gentlemen, we'll turn to you for your opening statements. I don't know what you've arranged, in terms of who will go first, but we'll turn it over to you. Unmute yourself when you're prepared to speak. Then, we'll have some questions for you once we've heard your opening statements.

**Mr. Feras Antoon (Chief Executive Officer, Entreprise MindGeek Canada):** Good afternoon. My name is Feras Antoon.

I'm the chief executive officer of Entreprise MindGeek Canada. With me are David Tassillo, chief operations officer, and Corey Urman, vice-president of product management, video-sharing platforms. We are grateful to the committee for the opportunity to speak with you today.

The full document can be viewed at the following URL.
https://www.ourcommons.ca/DocumentViewer/en/43-2/ETHI/meeting-19/evidence

# Exhibit D



**Casey McKay**  1:17 PM

The consultant said someone contacted MG Premium promising information about you and your case for money and then they got the UpWork messages through discovery.

They told me I'll be disbarred and they are bringing me in as a witness on this case.



**Casey McKay**  1:39 PM

Jason Tucker

He said he's been a consultant for MG Premium for like 10+ years. I get he's like a private investigator or something similar.