UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. **2:21-cv-08533-MCS-KK** | Date **June 2, 2023** |
| Title ***MG Premium Ltd. v. Does*** | |

Present: The Honorable **Mark C. Scarsi, United States District Judge**

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER (ECF NO. 100)

Plaintiff MG Premium applies ex parte for a temporary restraining order and an order to show cause why a preliminary injunction should not issue against Defendant Amrit Kumar. (Notice of TRO, ECF No. 100; TRO, ECF No. 100-1.) The Court deems this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

**I.    BACKGROUND**

The facts of this case have long been repeated throughout the course of this litigation. In sum, Plaintiff alleges that it owns the copyrights to thousands of erotic videos uploaded to a host of subscription-based adult websites. Kumar is the owner of the goodporn.to website, an alleged pirate website that posts thousands of Plaintiff's pornographic videos for Internet users to view gratis. Kumar asserts that Plaintiff transferred all the copyrights to him in a purported "Bi-Lateral Agreement," signed by Kumar and Feras Antoon, the latter being a former executive of a separate company affiliated with Plaintiff. Plaintiff and Antoon deny ever transferring or licensing the copyrights to Kumar or his website through this agreement.

Recently, however, Plaintiff discovered that Kumar had issued Digital Millennium Copyright Act ("DMCA") takedown notices to Twitter, where Plaintiff regularly notifies its followers of new material on its websites. (Tucker Decl. ¶¶ 28–30, 34, ECF No. 100-2.) Plaintiff then issued a DMCA counternotice to Twitter but was unable to halt the DMCA takedown. (Bjorgum Decl. Ex. F, ECF No. 100-5; Tucker Decl. Ex. B, ECF No. 100-3.)[1] The resulting takedowns replaced Plaintiff's tweets with notices indicating that Brazzers, one of Plaintiff's adult websites, was posting infringing content on its Twitter page rather than any properly copyrighted works. (Tucker Decl. Exs. B–C.) Plaintiff then filed the instant ex parte application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue.

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standard for granting a temporary restraining order is essentially the same as the standard for granting a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.    DISCUSSION

### A.     Likelihood of Success on the Merits

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work

---

[1] Each of the exhibits to the Tucker Declaration and the Bjorgum Declaration are contained in ECF Nos. 100-3 and -5, respectively.

by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). Infringement occurs when a defendant violates one of the exclusive rights of the copyright holder, 17 U.S.C. § 501(a), including the right to reproduce the copyrighted work, to prepare derivative works, to distribute copies to the public, and to publicly display the work, *id.* § 106.

        1.    <u>Ownership</u>

In support of the ownership element, Plaintiff filed a sample of 20 of its valid U.S. Copyright Office registrations issued within five years of initial publication, (TRO 10; *see also* Bjorgum Decl. ¶ 7, Ex. B), which "raises the presumption of copyright validity and ownership" as to these works, *Unicolors*, 853 F.3d at 988. While Plaintiff alleges that Kumar's goodporn.to website displays at least 1,438 of Plaintiff's infringing works, it would be impracticable to require Plaintiff to submit the registrations for each work alleged as infringed at this stage of proceedings. Further, each of the titles of work—with the exception two slightly mismatched titles—are accounted for in the submitted copyright registrations and the Subject Works of this litigation. (*Compare* Bjorgum Decl. Ex. B, *with* FAC Ex. A, ECF No. 30-1.) The Court finds the proffered copyright registrations are prima facie evidence of Plaintiff's ownership of the Subject Works. 17 U.S.C. § 410(c); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989).

However, Kumar points to the purported Bi-Lateral Agreement as demonstrating transfer of ownership and proof of his counterclaims against Plaintiff. (Am. Ans. 10, 20–23, Ex. B, ECF No. 63.)[2] Antoon has disputed the authenticity of the writing, asserting that he "did not sign the BILATERAL AGREEMENT and could not do so because [he] was never an officer or director of MG Premium Ltd." (Antoon Decl. ¶ 3, ECF No. 40-14.) While Kumar has failed to offer any corroborating evidence supporting the authenticity of the agreement, (Bjorgum Decl. ¶ 6), neither the Antoon declaration nor the purported agreement is conclusive evidence of Kumar's ownership or lack thereof. Kumar does bear the burden to rebut the presumption of Plaintiff's ownership, *Micro Star v. FormGen, Inc.*, 154 F.3d 1107, 1109–10 (9th Cir. 1998), but the Court cannot conclude without further evidence whether the Bi-Lateral Agreement is sufficient to rebut the copyright registrations, the latter of which were all issued before the alleged transfer of ownership, (*compare* Bjorgum Ex. B (providing registrations issued between April

---

[2] Kumar's answer, counterclaims, and exhibits are all contained in ECF No. 63.

2014 and February 2019), *with* Am. Ans. Ex. B (dated April 2019)). The Court will not assume at this early stage and on thin evidence that Kumar's proffered agreement (and thus his counterclaims) are fictious. Given the open questions regarding the rebutting force of the Bi-Lateral Agreement, the Court finds that Plaintiff has not clearly demonstrated a likelihood of proving the ownership element.

However, because Plaintiff has at least provided some evidence questioning the authenticity of the agreement and proffered prima facie evidence of at least 20 of the Subject Works, the Court finds that Plaintiff has raised serious questions going to the merits of its claim, despite failing to demonstrate a likelihood of success. *Cottrell*, 632 F.3d at 1131–32.

### 2. Copying the Protected Works

On the copying element, Plaintiff points primarily to the pleadings. (TRO 12–13 & n.1.) First, Plaintiff argues that Kumar concedes that he is copying the work onto the goodporn.to website but as the owner of the content. (TRO 12; Am. Ans. ¶¶ 2, 7, 21.) Plaintiff also points to the 1,438 registered works, whose titles match the uniform resource locators—or URLs—of the allegedly infringing copies. (TRO 12 n.1; FAC Exs. A–B.) And according to Plaintiff, Kumar's goodporn.to website boasts the ability to allow users to "[w]atch or download thousands of porn videos absolutely free from channel/networks such as **Brazzers**[ and] **Realitykings**," (TRO 5 (indicating a last visited date of May 29, 2023)), which Plaintiff owns and operates, (FAC ¶ 32). At this stage, these facts are sufficient to demonstrate serious questions as to the copying element.[3] *Cottrell*, 632 F.3d at 1131–32. While works bearing the same or similar titles from Plaintiff's adult websites appear on Kumar's website, the open questions surrounding ownership weaken the likelihood of Plaintiff succeeding on the merits of its copying arguments.

In sum, Plaintiff has only demonstrated serious questions going to the merits of its claim. Thus, to demonstrate an entitlement to injunctive relief, Plaintiff must prove that the balance of hardships tips sharply in its favor, "assuming the other two elements of the *Winter* test are also met," i.e., a likelihood of irreparable harm and the public interest. *Cottrell*, 632 F.3d at 1132.

---

[3] While the Court does not at this time invite any party to submit the subject videos in support of any particular request or motion, the evidentiary showing satisfying the "serious questions" standard may be insufficient at a later stage when the Court must conduct a more searching review of the record to establish liability.

### B. Likelihood of Suffering Irreparable Harm

"An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1050 (N.D. Cal. 2004) (citing *Pub. Util. Comm'n v. FERC*, 814 F.2d 560, 562 (9th Cir. 1987)). While "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm," *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841, the party seeking injunctive relief must nonetheless demonstrate a *likelihood*, rather than a *possibility*, of irreparable harm, *Winter*, 555 U.S. at 20. Monetary damages are insufficient to demonstrate such irreparable harm. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiff has failed to demonstrate irreparable harm meriting a temporary restraining order. Plaintiff points to two primary forms of injury: "[l]ost market share and erosion of company goodwill." (TRO 15, *see also id.* at 14–15.)

As to market share, Plaintiff makes no attempt to explain how loss of market share is not simply lost revenue—and thus monetary damage—from its subscription-based model. (*Id.* at 14–15.) While Kumar's allegedly fake contact information would certainly tip the balance closer to Plaintiff's favor, *see Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("Damages are no remedy at all if they cannot be collected . . . ." (internal quotation marks omitted)), Plaintiff purports to have uncovered Kumar's true address, name, and telephone number from his former counsel, which ameliorates those concerns, (TRO 9). Further, Plaintiff has failed to demonstrate the likelihood of any "immediate threatened injury." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016). Plaintiff's anti-piracy consultant asserts only that a false DMCA takedown "*may* push *potential* customers toward rival brands and studios," (Tucker Decl. ¶ 30 (emphases added)), but this statement only shows a *possibility* of loss of consumers who are only *potential* customers, who are unlikely to even be countable within Plaintiff's market share.

As to loss of goodwill, Plaintiff asserts that Kumar's DMCA takedown notices damaged Plaintiff's marketing and branding. (TRO 14–15; Tucker Decl. ¶¶ 28–30.) However, Plaintiff has failed to show how decreased legitimacy in this industry results in a damaged reputation. In its own pleading, Plaintiff specifically alleges that "5.75 million monthly visitors" perused infringing material on the goodporn.to website from August to September 2021. (FAC ¶ 10.) Apparently, millions of online

visitors of this website alone care little about where or from whom they consume erotic content originating from Plaintiff's websites. Further, even if Twitter had not yet reverted all of the DMCA takedowns at the time of drafting Tucker's declaration, Twitter began walking back the takedowns within just a few days, which diminishes Plaintiff's claim of "untold damage" to its reputation. (Tucker Decl. ¶¶ 37–38.) And if Kumar's claim of ownership is meritorious, then the fact of a DMCA takedown notice is entirely consistent with his rights as owner of the copyrighted material. 17 U.S.C. § 512.

Given these gaps in reasoning, Plaintiff has not demonstrated a likelihood of irreparable harm. Because Plaintiff has raised only serious questions as to the merits of its claim yet failed to show a likelihood of irreparable harm, the Court need not consider the remaining elements of the *Winter* factors. *Cottrell*, 632 F.3d at 1131–32.

## IV. CONCLUSION

Accordingly, Plaintiff's ex parte application is denied.

**IT IS SO ORDERED.**