A. Eric Bjorgum (State Bar No. 198392)
Marc A. Karish (State Bar No. 205440)
KARISH & BJORGUM, PC
119 E. Union St., Suite B
Pasadena, California 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
E-Mail: eric.bjorgum@kb-ip.com

Attorneys for Plaintiff
MG PREMIUM LTD

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MG PREMIUM LTD, a limited liability company organized under the laws of the Republic of Cyprus,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOES 4-20, d/b/a GOODPORN.TO, AMRIT KUMAR, an individual; LIZETTE LUNDBERG, an individual; and EMILIE BRUNN, an individual,<br><br>Defendants. | Case No. 21-cv-08533-MCS-SP<br><br>**PLAINTIFF MG PREMIUM LTD'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS**<br><br><br>Date:  Jan. 8, 2024<br>Time: 9:00 a.m.<br>Judge:  Hon. Marc Scarsi<br>Courtroom: Courtroom 7C<br>First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012 |

TO THE JUDGES OF THIS COURT AND DEFENDANTAMRIT KUMAR:

PLEASE TAKE NOTICE THAT on January 8, 2024 at 9:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located in Courtroom 7C at 350 West 1st Street, 9th Floor, Los Angeles, California 90012-4565, Plaintiff MG PREMIUM LTD ("Plaintiff") will present its motion for a default judgment against Defendants Amrit Kumar, Lizette Lundberg, Emile Brunn and John Does 4 - 20 ("Defendants").

1. The accompanying Declaration of Eric Bjorgum establishes the matters identified in Local Rule 55.

2. As detailed in the accompanying pleadings, papers on file, and orders of this Court, Plaintiff has a vast library of protected copyrights that have been infringed en masse by Defendant. Defendant has failed to appear in this action.

3. By this Motion, Plaintiff seeks damages, including statutory damages for willful infringement, injunctive relief, and attorneys' fees.

This Motion is based on this Notice and Motion, Memorandum of Points and Authorities, the attached Declaration of A. Eric  Bjorgum, the Proposed Judgment filed herewith, and the pleadings, files, and other matters that may be presented at the hearing.

Dated:  December 11, 2023

**KARISH & BJORGUM, PC**

*/s/ A. Eric Bjorgum*
A. Eric Bjorgum, State Bar No. 198392
119 E. Union St., Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
Email: Eric.bjorgum@kb-ip.com

Attorneys for Plaintiff MG PREMIUM LTD

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..........................................1

I.  INTRODUCTION ...........................................................................................1

II.  FACTS........................................................................................................3

III. STANDARD ................................................................................................5

IV. ARGUMENT ................................................................................................5

    A.    This Court has Jurisdiction over the Subject Matter and the Defendant. .....5

    B.    Default Judgment is Warranted under the Eitel Factors. .............................6

        1. There Is A High Possiblity MG Premium Will  Be Prejudced Without
        a Default Judgment. ...................................................................................6

        2. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the
        Complaint Warrant Default. .....................................................................7

V.  THE SPECIFIC REMEDIES SOUGHT ARE AUTHORIZED AND
APPROPRIATE.................................................................................................12

    A. Statutory Damages Are Authorized. ...........................................................12

    B. Defendant Has Damaged Plaintiff. .............................................................14

    C. The Facts and Law Support a Large Statutory Award...................................16

    D. Willfulness. ...............................................................................................17

    E. Plaintiff Is Entitled to Injunctive Relief. .....................................................18

    F. Irreparable Harm.........................................................................................18

    G. Monetary Damages are Inadequate.............................................................20

    H. Balance of Equities and Public Interest Favor an Injunction. ......................20

    I. The Court Should Order Registries and Registrars to Transfer to MG
Premium Ltd the Domains Used by the Defendants for Infringement.**Error! Bookmark not d**

    J. United States-Based Vendors Should Be Enjoined From Doing Business
with Goodporn.to or Its Successors. .................... **Error! Bookmark not defined.**

    K. Plaintiff Is Entitled To Attorneys Fees. ........ **Error! Bookmark not defined.**

i

VI.   CONCLUSION...............................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ...............................................................................................20

*Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ...............................................................................................22

*Apple II*, 658 F.3d at 1154 ..............................................................................21

*Cal. Security Cans,* 238 F.Supp. at 1777 ........................................................13

*Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991)............14

*China Central Television v. Create New Tech. (HK) Ltd.,* No. 15-01869 MMM, D.I. 192 at ¶ 18 (C.D. Cal. May 31, 2016) ........................................................24

*Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001)..............................................................................................17

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020,  1032 (9th Cir. 2013)........9

*Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 702 (9th Cir. 2008) .....19

*DISH Network L.L.C. v. Dima Furniture, Inc.,* 2019 WL 2498224 at *8-9 (D. Md. June 17, 2019) ........................................................................................24

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006) ................................................................... 19, 20, 21

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986)............................. 6, 7, 13

*Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005)........21

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952)......................................................................... 14, 18

*Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006)..........................................................................................8

*Garamendi v. Henin,* 683 F.3d 1069, 1080 (9th Cir. 2012) ..................................5, 8

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ..............................5

*Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990).......19

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) ........... 20, 22

*In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ...........................................................6

*International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987)18

*Jackson v. Sturkie*, 255 F. Supp. 2d at 1103 ..........................................................21

*Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999)..........................26

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd,* 149 F.3d 987, 996 (9th
    Cir 1998) .........................................................................................................16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37
    (2005) ................................................................................................................9

*MG Premium v. Thomas Zang,* et al., Cause No. 3:20-cv-05134-BHS...................19

*Oracle USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1166 (D. Nev. 2018)21, 22

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002)........7

*PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F. Supp.2d 1110, 1116
    (S.D. Fla. 2007)..................................................................................................7

*Perfect 10, Inc v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)...........10

*Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D.
    Cal. Mar. 27, 2000) ............................................................. 15, 17, 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007)..........10

*Playboy v. Webbworld,* 968 F.Supp. 1171 (E.D. Tex 1997) ...................................17

*Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362
    (Fed. Cir. 2012)................................................................................................20

*Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945)24

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488,
    496-97 (4th Cir. 1996) .....................................................................................14

*TD Ameritrade, Inc. v. Nev. Agency & Tr. Co.*, No. 3:08-CV-00245-LRH-RAM,

iv

2008 U.S. Dist. LEXIS 105677, at *17 (D. Nev. Oct. 30, 2008) .......................24

*Tiffany* Inc. *v. Luban,* 282 F.Supp. 2d 123, 124 (S.D.N.Y. 2003)............................19

*Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10-CV-9336 (DAB), 2011
    U.S. Dist. LEXIS 158882, 2011 WL 13042618, at *2 (S.D.N.Y. May 13,
    2011) ...................................................................................................................25

*Triangl Grp. Ltd. v. Jiangmen City Xinhui Dist. Lingzhi Garment Co.,* No. 16-
    CV-1498 (PGG), 2017 U.S. Dist. LEXIS 102256, 2017 WL 2829752, at *8
    (S.D.N.Y. June 22, 2017)...................................................................................25

*Warner* Bros. *Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332, 8-9 (C.D. Cal.
    Nov. 30, 2009) ...................................................................................................26

*Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004) ........17

*Warner Bros. Entm't, Inc. v. Doe*, No. 14- CV-3492 (KPF) (S.D.N.Y. Oct. 3,
    2014) ...................................................................................................................25

*Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 919 (9th Cir. 2022)....................................6

*Williams v. Bridgeport Music, Inc.*, 2015 U.S. Dist. LEXIS 97262, 2015 WL
    4479500, at *41 (C.D. Cal. 2015)......................................................................22

**Other Authorities**

17 U.S.C § 504(c) ...................................................................................................14

17 U.S.C. § 101 *et seq*............................................................................................2, 8

17 U.S.C. § 502(a) ...................................................................................................19

17 U.S.C. § 504(C)...................................................................................................13

17 U.S.C. § 504(c)(2)...............................................................................................18

v

17 U.S.C. § 505 ........................................................................................26

17 U.S.C. §§ 101 ........................................................................................6

17 U.S.C. §504(c) ......................................................................................14

28 U.S.C. §§1391 ........................................................................................6

28 U.S.C. §§1391(b), (c) and (d) ................................................................6

28 U.S.C. §1400(a) ......................................................................................6

Fed. R. Civ. P. 55(b)(2) ..............................................................................5

Fed.R.Civ.P. 55 ..........................................................................................1

Fed.R.Civ.P. 65 ..................................................................................24, 25

Fed.R.Civ.P. 65(d)(2)(C) ....................................................................24, 25

Lanham Act, 15 U.S.C. § 1114(1), 15 U.S.C. § 1121, 15 U.S.C. § 1125, 28
     U.S.C. § 1331 and 28 U.S.C. § 1338 ................................................6

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, MG Premium Ltd (hereinafter "MG Premium Ltd" or the "Plaintiff") hereby moves the Court, in accordance with Fed.R.Civ.P. 55 and Local Rule 55, for Default Judgment against Defendants Amrit Kumar a/k/a Krish Kumar ("Kumar"), Lizette Lundberg ("Lundberg") and Emile Brunn ("Brunn") (collectively, "Defendants[1]"), through its counsel, A. Eric Bjorgum of Karish & Bjorgum, PC.

## I.   INTRODUCTION

This case reveals one of the most audacious schemes utilized by copyright pirates. In short, Defendants admitted copying over 21,000 of Plaintiff's registered copyrighted works at the time the case was filed -- on the basis of an obviously fraudulent "bilateral agreement" whereby Defendant Kumar allegedly purchased Plaintiff's enormous intellectual property library for $25 million in cryptocurrency. documented by nothing more than a single, barely

---

[1] "Defendants" are in two groups: Kumar (owner and operator of the subject websites), and Lundberg/Brunn (the "freelancers" who sent DMCA counternotices stating "we" own the infringing material, but do not admit affiliation with Kumar and incredibly claim they were put up to the counternotices that Plaintiff's agent). There was some confusion in the summary judgment briefing about the use of "Defendants." It generally refers to Kumar and his agents (for which Brunn and Lundberg clearly qualify), successors and predecessors. However, at times Lundberg and Brunn are called out individually for their standing as individuals who asserted ownership of the Works separate from Kumar's assertion by contract. Further, given that "Amrit Kumar" is most likely a false name, "Defendants" is used to leave open the possibility that further "Doe" amendments may be necessary.

1

comprehensible four page contract "signed" on Plaintiff's behalf by someone who never worked for Plaintiff.

As this case has proceeded for two years, Defendant "Amrit Kumar" continued to reap profit from this scheme. Operating covertly behind proxy internet protocol addresses, anonymous email servers, and fake physical addresses, Kumar adopted the guise of a "pro per" litigant while engaging ghostwriters, dodging depositions, eschewing telephone or video communication with counsel, and submitting falsified evidence of copyright ownership.  Kumar and his cohorts even interfered with Plaintiff's Google and Twitter feeds while the case was pending. Meanwhile, Plaintiff has patiently developed its case, adhered to the rules, and continues to suffer losses because of Defendants' actions.

Plaintiff initiated this action in October, 2021, seeking damages and injunctive relief under the Copyright Act, 17 U.S.C. § 101 *et seq.*  Dkt. No. 1. Plaintiff filed successful motions for early discovery and to serve by email. (Dkt. Nos. 14, 18.) In August 2022, Defendant Kumar filed a motion to dismiss for lack of personal jurisdiction and forum nonconveniens (Dkt. No. 23), which was denied (Dkt. No. 46).

Then, for the first time, Defendant Kumar asserted ownership of MG content through a contract (the "bilateral agreement") which this Court eventually identified as failing to "bear any indicia of reliability or authenticity."  (Dkt. No. 196 at 7.)  Thus, Kumar admitted copying but claimed that he owned the copied material; after that evidence was discredited, his case was baseless.

Nevertheless, Kumar engaged in extensive litigation that had three themes: (i) the inauthentic bilateral agreement; (ii) he is pro per; and (iii) he lives in India and does not speak English. Due to his assertions as a pro per and non-English speaker, Kumar was afforded deference by the Court. In over two years of proceedings, Defendants (i) never communicated directly with opposing counsel other than by email; (ii) never appeared for a deposition, in violation of multiple

Court Order to appear; (iii) failed to appear at a Court-ordered test conference to ensure equipment worked after requesting a video settlement conference; (iv) repeatedly filed procedurally improper motions to reconsider and ex parte applications; (v) failed to pay Court ordered sanctions; (vi) generally violated Court Orders and (vii) provided false mailing addresses which have littered the docket with over thirty returned mailings. Ultimately, Defendants failed to attend the Final Pretrial Conference. It is clear that Defendants' only interest is in delay to keep their websites generating ad revenue.

As of the date of this filing, following the Court's Order of infringement on two claims under on summary judgment, Defendants continue to utilize the domains Goodporn.to, Goodporn.se, Gpstatus.org *and* continue to display Plaintiff's copyrighted materials. With an ample foundation of Defendants' wrongdoing, Plaintiff requests broad relief on this Motion.

## II. FACTS

In addition to the facts identified above and found in this Court's Summary Judgment ruling (Dkt. No. 195), Plaintiff would call Kumar's egregious discovery conduct, which was proceeding before Magistrate Judge Kato (now elevated to the District Court). Following his failure to appear at multiple depositions (including two ordered by the Magistrate), Judge Kato issued a Report and Recommendation calling for terminating sanctions. The details of that report show Defendants' callous disregard for the judicial system by forcing depositions to occur in the middle of the night and never appearing, thus taking valuable time from litigation support staff as well as attorneys and parties.

In one such instance, Defendant Kumar was directed to participate in a deposition scheduled for June. Two attempts were made in the middle of the night (Pacific Standard Time) due to defendant's refusal to appear any other time. The virtual deposition room remained accessible for nearly 24 hours, with multiple

unsuccessful attempts to contact Kumar made via phone and emails. Judge Kato issued a final order for Kumar to appear, and once again he claimed "technical issues" and failed to logon to the deposition or call any of the half dozen phone numbers he was provided.

Knowing that Kumar had previously claimed technical difficulties, Judge Kato allowed the settlement conference to occur on video, provided the video was tested first. The Plaintiff parties, from three countries, contacted and successfully tested their equipment with the Court's office. Defendants wholly failed to attend. Defendant Kumar hired a person whom the clerk stated identified herself as "Jennifer," with no last name, then disappeared. Defendants Lundburg and Brunn never appeared.

As a result of actions regarding the settlement conference, Judge Kato sanctioned Brunn and Lundburg $250 each for the settlement conference non-appearance. Lundburg has additionally been sanctioned $7,000 due to Plaintiff for attorney's fees as Lundburg filed a claim stricken under the Anti-SLAPP statute. Defendant Kumar has been sanctioned $4,000 for costs to Plaintiff as a result of his non-appearances at depositions. No sanctions have ever been paid.

Defendant has continued to earn income and profits from infringing on thousands of Paintiff's copyrighted works by advertising on the Goodporn website. (FAC ¶ 36).

Furthermore, videos on Defendant's sites may be shared on other sites. Such functionality makes it impossible to know how many times and where an unlicensed copyrighted videos have been posted and displayed illegally as a direct result of Defendant's unlawful display. (FAC ¶ 38.)

Thus, as further explained below, the Court should enter default judgment against Kumar. pursuant to Fed. R. Civ. P. 55(b)(2).

**III.    STANDARD**

Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment. On entry of default, well-pleaded allegations in the complaint concerning liability are taken as true. However, damages must be proven. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Courts consider several factors in determining whether to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In addition, the Court must first address whether it may exercise subject-matter jurisdiction and personal jurisdiction over Defendants and whether Plaintiff properly served Defendants. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

Finally, Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian.

**IV. ARGUMENT**

**A.    This Court has Jurisdiction Over the Subject Matter And The Defendant.**

This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 et seq., 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

This Court has personal jurisdiction over Defendants, as was established in prior briefing, which resulted in this Court's Order at Dkt. No. . *See, e.g., Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 919 (9th Cir. 2022). Per the Court's suggestion at the Pretrial Conference, that briefing is not required here. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b), (c) and (d); and 28 U.S.C. §1400(a).

**B.      Default Judgment is Warranted under the *Eitel* Factors.**

**1.  There Is A High Possiblity MG Premium Will  Be Prejudiced Without a Default Judgment.**

Plaintiff will be prejudiced if a default judgment is not entered.

Plaintiff did substantial work in developing this case, and Defendant resisted where necessary to create delay.  Finally, when it came time to proceed with the trial, Defendants were nowhere to be found. If default judgment is not entered for Plaintiff, its patient development of the record will all be for naught.

Plaintiff has done everything possible to allow Defendants due process. They aren't interested, but now the final step of entry of judgment is upon them. Without a judgment, Plaintiff's efforts to stop the illegal exploitation of its copyright protected works and the orders of the Court are essentially meaningless. Defendant Kumar has demonstrated that he will not honor a judgment and will do anything to keep his pirate operation in business.

If Plaintiff's request for default judgment is not granted, Plaintiff "will likely be without recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002). Moreover, due to the fact that Plaintiff has stated a valid copyright claim, it "undeniably would be prejudiced absent an entry of permanent injunctive relief [by] default judgment." *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.,* 510 F. Supp.2d 1110, 1116 (S.D. Fla. 2007).

Additionally, absent a fulsome default judgment awarding damages, equitable relief, and fees, there would be no reason for Defendant and others

6

similarly situated not to engage in similar schemes to string along litigation for years while they pirate and profit from the Plaintiff's copyrighted works, which Defendant already has in its possession.

2.      **The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint Warrant Default.**

Factors two and three of the *Eitel* test require an analysis of MG's claims and the sufficiency of the Complaint. First, everything in the complaint is deemed to be true because of the default.

a.  **The Court Should Enter Judgment on the Copyright Infringement Claim.**

The First Cause of Action is for Direct Copyright Infringement. "[T]o prevail on a claim of copyright infringement, the Plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Funky Films, Inc. v. Time Warner Entertainment Company, L.P.,* 462 F.3d 1072, 1076 (9th Cir. 2006). Again, on entry of default, well-pleaded allegations in the complaint concerning liability are taken as true. However, damages must be proven. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012).

The FAC adequately alleged copyright infringement. It alleged ownership, i.e., that "MG Premium is the owner of valid and registered copyrights in the Subject Works." (FAC ¶ 58.) It further alleged copying and infringement:

> Defendants have infringed, and are continuing to infringe, MG Premium's copyrights by reproducing, adapting, distributing, and/or publicly displaying and authorizing others to reproduce, adapt, distribute, and/or publicly display copyrighted portions and elements of the Subject Works, and/or the Subject Works in their entireties, without authorization, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*

7

(FAC, ¶ 60.)

The FAC also alleged that Defendants were not authorized to display the Works (¶ 62), that infringement was willful (¶¶ 64-65), and that Defendants actively uploaded the infringed works (¶ 67).  Though Plaintiff still must show damages, it should be noted that the FAC alleges conduct supporting both direct and indicate damages.  (FAC, ¶¶ 74-77.)

Further, in granting summary judgment, the Court found ownership and copying established and that only the "volitional" element of causation was needed.  (Dkt. No. 195.)  That element should be presumed because the FAC is now deemed to be true, and, because of Defendant's refusal to sit for deposition, the element could not be established directly.

Moreover, causation can be inferred from Defendant's admissions.   On a false DMCA notice dated August 5, 2022, Defendant Kumar wrote that he has "Full ownership of Brazzers videos, galleries, stories and etc has transferred to me according to a contract that I have made with MG Premium LTD." (See Dkt 30-1 Exhibit D, Page 2). His answer to the FAC states at ¶ 3 that "The Defendant asserts that he is the owner of the contents in question as a result of a contract with MG Premium. The Defendant denies any infringement of the Plaintiff's copyrights."  Finally, these are not "upload" or UGC websites; Kumar is the only person who could have loaded the materials.

Defendant actively displayed 1,438 of MG's copyright-protected works on 1,438 separate and distinct webpages (see Dkt 30-1 Exhibits A & B).  All of these works, with more added regularly, have been made available since the initial filing of this case.

### b.  The Court Should Enter Judgment on the Inducement of Infringement Claim.

As the Court stated in its summary judgment ruling, inducement of infringement requires " (1) the distribution of a device or product, (2) acts of

infringement, (3) an object of promoting its use to infringe copyright, and (4) causation." (Dkt. No. 195, quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (detailing the elements propounded in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005)).

Inducement was adequately pleaded in ¶¶ 78 - 88 of the FAC, and those allegations are conceded as true under the entered default.  Further, the Court granted Plaintiff's motion for summary judgment on inducement.  Reviewing the record, the Court found, *inter alia*:

> Defendants' offer of "services available on the Internet" and the copying of MG Premium's works onto the website, whether by Defendants themselves or by goodporn.to visitors, satisfy the first two *Grokster* elements. *Fung*, 710 F.3d at 1033.

> The third and fourth *Grokster* elements are also met here, where Defendants actively promote the ability to upload and download MG Premium's copyrighted works.

(Dkt. No. 195 at 10.)  For these reasons, judgment should be entered on the second cause of action.

### c.  The Court Should Enter Judgment on the Vicarious Infringement Claim.

Plaintiff should also be granted judgment on the vicarious infringement claim.  As noted by the Court in Dkt. No. 195 at page 10,

> To prevail on a claim for vicarious infringement, a plaintiff must prove the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Giganews*, 847 F.3d at 673.

> "[V]icarious infringement's roots lie in the agency principles of *respondeat superior*." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

In its ruling on summary judgment, the Court denied Plaintiff's motion and reasoned:

> MG Premium offers no basis in law or fact to prove that Kumar enjoys any right or ability to "stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Certainly, if one of Kumar's employees or agents uploaded, downloaded, or otherwise copied the infringing works, MG Premium could demonstrate the requisite supervisory control.

> But MG Premium offers no facts from which the Court could make such a determination for any third party.

However, that difficulty of proof is now remedied by the fact that the FAC is presumed to be true. The FAC states that Defendants "are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct." (FAC, ¶ 92.)

Moreover, as the Court saw at the Pretrial Conference, proof is nearly impossible when Defendants do not participate in the litigation process. Any questions about Defendants' business could have been resolved at trial during cross-examination, but Defendants gave no indication they would appear at trial. Thus, those questions are now moot because the FAC is deemed to be true.

### d. The Court Should Enter Judgment on the Contributory Infringement Claim.

Plaintiff should also be granted judgment on the contributory infringement claim. As noted by the Court in Dkt. No. 195 at page 11:

> Contributory copyright infringement "may be imposed for intentionally encouraging infringement through specific acts." *Amazon.com*, 508 F.3d at 1170.

"[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *Visa*, 494 F.3d at 795.

In the Summary Judgment ruling, the Court found "no factual disputes preventing the grant of summary judgment." (Dkt. No. 195.)  The Court found that MG demonstrated that all Defendants had knowledge of the infringement and reincorporated its arguments regarding inducement on the *Grokster* factors. (Dkt. No. 195 at 11.) The claim was also adequately pleaded in Paragraphs 89 - 97 of the FAC. Therefore, judgment should be granted on the claim for contributory infringement.

### e. The Court Should Enter Judgment on the Declaratory Relief Claims.

The Court should also enter Judgment on Plaintiff's claims seeking a declaration of ownership. Plaintiff's motion for summary did not move specifically for judgment on the declaratory relief causes of action, but judgment is appropriate now because of the default and because the Court's Order on Summary Judgment thoroughly discredited Defendant's "bilateral agreement" - the only basis for their alleged ownership.

Moreover, the Declaratory Relief claims were added in the FAC in response to Kumar's assertion of ownership and DMCA counter-notices filed by Defendants Lundberg and Brunn. Because those counternotices claimed "we own" the Subject Works, Plaintiff presumed these defendants were operating with Kumar.  Surprisingly, they later claimed to be  "freelancers" who were hired by Plaintiff's agent Jason Tucker.  This claim was facially absurd, and there was absolutely no basis for it.

Assertions of ownership were attached to the FAC as Exhibits C - E, and their invalidity is proven and incorporated in the default through Paragraphs 98 - 103.

### 3. The Amount of Money At Stake Is Substantial, As Is Defendants' Infringement.

As shown below in section III., actual damages could be calculated at over $215,000,000, thus statutory damages of $21,570,000 are appropriate (at a statutory assessment of $15,000 per infringement) for Defendants' willful infringement. Only a large award will serve to deter these arrogant Defendants from future illegal action. Accordingly, because this amount is so large, factor four also favors entry of a default judgment.

### 4. The Remaining Factors.

Factors five, six, and seven have also been satisfied. There can be little dispute as to the material facts. Plaintiff documented 1,438 infringements of its copyrighted works on the Defendant's website. Plaintiff has demonstrated that it owns the copyrights for these works, that registration occurred before the infringing activity, that Defendant had no authority to display Plaintiff's copyrighted works.

There is no evidence that there is a dispute concerning material facts or that default was due to excusable neglect. With regard to factor seven, although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel,* 782 F.2d at 1472, the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans,* 238 F.Supp. at 1777. Moreover, Defendant's failure to answer or otherwise respond to the Complaint "makes a decision on the merits impractical, if not impossible." *Id.*

### C. The Specific Remedies Sought Are Authorized and Appropriate.

### 1. Statutory Damages Are Authorized.

The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.

12

If the works were registered with the U.S. Copyright Office prior to the commencement of the infringing activity (they were), the copyright holder may elect statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases (such as this one) of willful infringement. 17 U.S.C. § 504(C).

Here, 1,438 of Plaintiff's registered US copyrighted works are displayed by Defendant on Defendant's website Goodporn.to. The value of Plaintiff's content, the damage caused by Defendant's unauthorized reproduction and distribution to hundreds of thousands of potential consumers, and the willfulness of Defendant's infringing actions, warrant a sizeable award.

Because actual damages are often difficult to prove, statutory damages have been authorized to make such proof unnecessary. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). Where timely registered works are infringed, the Copyright Act authorizes statutory damages. 17 U.S.C. §504(c). Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work. *Id*. Congress increased the maximum from $100,000 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology. H.R. Rep. No. 106-216 (1999), pp. 6-7. The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little to no damage. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co*., 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

Defendant's conduct has caused and continues to cause damage to Plaintiff, and Plaintiff has no adequate remedy at law to compensate for all of the possible

damages stemming from Defendant's conduct. Pursuant to 17 U.S.C § 504(c), Plaintiff elects the right to recover statutory damages but submits this application with actual damages discussed to support the requested damages amount. Plaintiff is prepared to offer additional in-court testimony with respect to actual damages.

### 2.   Defendant Has Damaged Plaintiff.

Plaintiff owns one of the largest portfolios of premium adult-oriented audiovisual content in the world. In its library of works, Plaintiff is the copyright holder of "Reality Kings," "Brazzers," "MOFOS," "Babes.com," and "Twistys". These are the most well-known and popular brands in the legal adult entertainment industry.

The sale of memberships to Plaintiff's paid membership websites where Plaintiff offers its copyrighted works is directly damaged by Defendant's display of its works for free. Simply stated, potential customers of Plaintiff will not pay monthly rates for the right to access and view content that is available for free.

Internet traffic on Goodporn.to is *extensive.* For the three-month period ending August 2021, the Goodporn.to website averaged approximately 5.75 million visitors monthly. Complaint ¶ 10. The least expensive of Plaintiff's monthly paid memberships is Brazzers at $9.99 per month. Tucker Decl., ¶ 19. Lost revenue to Plaintiff, for the Goodporn.to users that had access to Plaintiff's Brazzers works for free in one month alone had a potential value of $57,442,500.00 during that time (5.75M x $9.99).

It is not possible to calculate an exact loss from a pirate service such as Goodporn.to. If even a fraction of those 5.75M monthly visitors would have paid for membership but for Goodporn.to, Plaintiff would have suffered substantial revenue losses. Additionally, the calculation does not account the fact that Plaintiff's works on Goodporn.to and Goodporn.se could be embedded and shared throughout the internet, resulting in an immeasurable loss of potential customers.

In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), the plaintiff magazine publisher sued a website for publishing its photographs on the Internet. Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect'10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download and easy to copy. A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement." *Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. The Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph. This $100,000 per photograph certainly demonstrates a basis for Plaintiff claiming that much per video, if not more.

Defendant's infringement was for a commercial purpose. Defendant earned and is earning money from advertising, and the value of advertising on Goodporn.to was and is directly related to the number of visitors to the site. Thus, the value of advertising is directly related to the quality and desirability of content. Plaintiff's paid membership websites and videos are among the most popular in the world. Defendant's website reached and continues to reach millions of potential consumers.[2] Each Goodporn.to user that is able to obtain Plaintiff's content for free damages Plaintiff by both the specific lost sale in that instance and the lost potential business from a viewer being accustomed to accessing the content for free due to Defendant's infringement.

Statutory damages serve both compensatory and punitive purposes, and they are thus therefore appropriate whether or note there is adequate evidence of

---

[2] Link: Goodporn.to https://www.similarweb.com/website/goodporn.to/#traffic Last Visited: December 8, 2023.

MOTION FOR DEFAULT JUDGMENT

actual damages suffered by the plaintiff or profits to disgorge. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd,* 149 F.3d 987, 996 (9th Cir 1998). Prior federal court decisions have recognized the high economic value of erotic material. *See Playboy v. Webbworld,* 968 F.Supp. 1171 (E.D. Tex 1997) (awarding $5,000 per erotic photo); *and Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11 (awarding $100,000, the then maximum, per adult photograph).

  **3. The Facts and Law Support a Large Statutory Award.**

  Infringements here were and are willful and malicious. Defendant knew that conduct was unlawful and acted without the slightest pretense of a justification. Defendant uploaded MG's copyrighted works onto Goodporn.to. At a minimum, Defendant was made aware of the infringements upon takedown notices sent by MG. (FAC, ¶ 2.) . Defendants' illegal actions were not a momentary lapse, but part of a sustained commercial enterprise. To deter others from the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-114.

  Defendants willfully infringed 1,438 of Plaintiff's works on at least 1,438 separate and distinct webpages resulting in millions of views.[3] The sheer volume of infringements indicates the willfulness of Defendant's actions and value of using Plaintiff's content. Where entire video works have been copied on the Internet, Courts have ordered large statutory damages. *E.g., Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004) ($150,000 per infringed feature length film); *see Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th Cir. 2001), cert denied, 534 U.S. 1127 (2002) ($72,000 per infringement of several half-hour television shows).

---

[3] For example, an active link to <u>adult content</u> owned by MG Premium Ltd. was displayed on Goodporn.to with 208,607 views after having only been uploaded 4 weeks ago. https://goodporn.to/videos/58704/brazzers-exxtra-twerkin-jerkin-cheatin-10-25-2023/

MOTION FOR DEFAULT JUDGMENT

**4.    Willfulness.**

"In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Defendant here knew of his infringement and carried it throughout this case. Plaintiff has compliant DMCA takedown notices informing Defendant of each and every infringement of Plaintiff's work. Declaration of Tucker, ¶ 25.

The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).

It is appropriate that the Court use opportunities such as this to send a message of deterrence to infringers that "it costs less to obey the copyright laws than to disobey them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987). The District Court in *Korwin* held that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors: the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id. See also*, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990).

Plaintiff alleged in its Complaint that Defendants acted willfully. *See* Complaint, ¶¶ 61, 68, 69, 72, 80, and 92. A Defendant's default with respect to a complaint that pleads willfulness, as here, establishes willful copyright infringement. *See, Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 702 (9th Cir. 2008) (after default willfulness allegations deemed true).

MOTION FOR DEFAULT JUDGMENT

Willfulness can also be inferred from a Defendant's failure to defend. *See, Tiffany* Inc*. v. Luban,* 282 F.Supp. 2d 123, 124 (S.D.N.Y. 2003) .

At the maximum of $150,000 per work when the Court finds infringement willful, statutory damages for the offense of Copyright Infringement would be $215,700,000.00 ($150,000 x 1,438 infringements). In a recent decision, *MG Premium v. Thomas Zang,* et al., Cause No. 3:20-cv-05134-BHS, the Western District of Washington reviewed a nearly identical set of facts with 2,433 infringements. There, the Court determined that $15,000 was appropriate for each infringement. Plaintiff asks the Court to apply the same analysis here and award $15,000 per infringement for a total of $21,570,000.

### 5.    Plaintiff Is Entitled to Injunctive Relief.

The Copyright Act provides that a district court may enter a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To determine the propriety of injunctive relief, courts consider four factors: (1) whether the owner has suffered an irreparable injury; (2) whether remedies available at law are inadequate to compensate for that injury; (3) whether a remedy in equity is warranted considering the balance of hardships between the plaintiff and the defendant; and (4) whether the public interest would be served by a permanent injunction. *See eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). The decision to grant injunctive relief rests within the equitable discretion" of the district court. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 394, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Such discretion should be "exercised consistent with traditional principles of equity." *Id.*

Here, all factors weigh in favor of injunctive relief against the Defendant.

### a.  Irreparable Harm.

The first factor in a permanent injunction analysis is whether plaintiff has suffered irreparable injury *or* will suffer irreparable injury absent an injunction. *See American Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). As part of a court's irreparable injury analysis, courts regularly examine three main considerations: (1) direct competition between the parties; (2) loss of market share due to the infringement; and (3) loss of customer and business goodwill. *See, e.g., Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362 (Fed. Cir. 2012) (stating that direct competition in the same market strongly supports the potential for irreparable harm absent an injunction); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010).

Here, Defendant is in direct competition with Plaintiff. Plaintiff makes its full-length content available through subscription-based websites to view content, while Defendant displays full-length videos on Goodporn.to for free to any viewer (monetizing through advertising revenue). There is a clear loss of market share to Plaintiff. If Plantiff's content is available for free on Goodporn.to users will not pay membership fees to view the content. Here, the infringement was on a broad scale, with 1,438 of Plaintiff's full-length videos. There is also loss of customer and business goodwill. Customers must pay a fee to view Plaintiff's full-length videos. For these videos to be on Goodporn.to damages Plaintiff's relationship with subscribers who pay to view the content.

Subscribers will terminate paid subscriptions to view the content and Plaintiff will get a reputation for its full-length content being available for free. Moreover, there is no evidence that Defendant will ultimately stop infringing Plaintiffs' work or that, absent an injunction, Defendant would stop.. *See Jackson v. Sturkie*, 255 F. Supp. 2d at 1103 (granting permanent injunction in a copyright infringement action as part of a default judgment because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease."); *Cal. Sec. Cans*, 238 F. Supp. 2d at 1178 Thus,

MOTION FOR DEFAULT JUDGMENT

without an injunction, Plaintiff's copyrighted works would remain vulnerable to continued and repeated infringement.

Here, there is evidence of irreparable harm and no evidence that absent an injunction Defendant will cease future exploitation of Plaintiff's copyrights.

### b.  Monetary Damages are Inadequate.

Monetary damages are inadequate.  Defendants have all failed to pay sanctions to the Court, and they violated Court orders.  A judgment will be no different. Due to their continuing infringement and evasive conduct, monetary damages alone are not adequate. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005). Lost market share and erosion of company goodwill are intangible injuries difficult to quantify and compensate which supports the issuance of a permanent injunction. *See Apple II*, 658 F.3d at 1154 (stating that injuries to a business' reputation and company goodwill are intangible injuries difficult to quantify and compensate).

Further, one of the most fundamental rights a copyright holder has is the right to exclude others from taking and distributing the copyrighted work and this right has routinely been held difficult to compensate solely through monetary compensation. *See eBay*, 547 U.S. at 395 (Roberts, C.J. concurring) (identifying and explaining the difficulty of protecting a right to exclude through monetary remedies alone). *See Oracle,* 324 F. Supp. At 1166. Further, given that Defendants are incognito, there is a high likelihood they will simply move the infringing database to a new website.  Defendants and their successors must be enjoined from further infringement. .

### c.  Balance of Equities and Public Interest Favor an Injunction.

A court must weigh and balance the competing effect that granting or withholding an injunction would have on each party. *See Oracle USA, Inc. v. Rimini St., Inc.*, 324 F. Supp. 3d 1157, 1166 (D. Nev. 2018) *citing Williams v.*

---

*Bridgeport Music, Inc.*, 2015 U.S. Dist. LEXIS 97262, 2015 WL 4479500, at *41 (C.D. Cal. 2015). The balance of hardships tips in favor of a holder of a copyright seeking to protect its copyrighted works when the party to be enjoined does not have a separate legitimate business purpose for continuing the conduct or acts deemed to be infringement. *Grokster*, 518 F. Supp. 2d at 1220. "[T]he touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the [copyright holder's] rights and protecting the public from the injunction's adverse effects." *i4i*, 598 F.3d at 863.

Here, a permanent injunction against Defendants for the possibility of future copyright infringement is in the public interest. *See Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work.").

### d. The Court Should Order Registries and Registrars to Transfer to MG Premium Ltd the Domains Used by the Defendants for Infringement.

Defendants used Goodporn.to to display 1,438 of Plaintiff's copyrighted full-length videos. Tonic Corporation is the registry for ".to" domains. Declaration of Jason Tucker ("Tucker Decl.") ¶ 6. Tonic is essentially the same as the Department of Motor Vehicles or the US Copyright Office, in that they control the domain name **registry** for all .to, domains, just as the DMV handles registration of cars. By this motion, Plaintiff asks that Tonic change the registrant of Goodporn.to to Plaintiff.

Similarly, Public Interest Registry ("PIR"), is the operator of the .ORG registry. Plaintiff requests an order to PIR to change the registrar for gpststatus.org to Plaintiff's registrar of choice, EuroDNS, and that EuroDNS identify Plaintiff as the registrant. These efforts may be done at Plaintiff's

21

reasonable expense. In the Proposed Judgment, Plaintiff requests that that operator change the registrar of record for the domain name Gpstatus.org to MG Premium's registrar of choice, EuroDNS.

Finally, the registry for the .SE domains is maintained by The Internet Infrastructure Foundation.  In the Proposed Judgment, Plaintiff requests that that operator change the registrar of record for the domain name Goodporn.se to MG Premium's registrar of choice, EuroDNS.

Transferring Goodporn.to, goodporn.se, and gpstatus.org to Plaintiff would stop Defendant from being able to distribute infringing content to the public in violation of Plaintiff's rights.

Without an order to the registries, Defendant can simply assign the domain names to another individual or entity, or move its operation outside of the reach of this Court.  The new entity can then have the infringing content served by new content delivery providers, and Plaintiff would have to file a new lawsuit or move the Court to stop the infringement. *Id.* More worrisome for Plaintiff, the new individual or entity can have the infringing content served by other service providers outside the U.S. (and outside the purview of this Court) which would be very difficult and expensive for Plaintiff to try to stop. *Id.* at ¶ 9.  Ordering the registries to transfer the domains to Plaintiff would stop Defendants from being able to distribute infringing content.

Such relief has been granted in other copyright infringement cases. *See China Central Television v. Create New Tech. (HK) Ltd.,* No. 15-01869 MMM, D.I. 192 at ¶ 18 (C.D. Cal. May 31, 2016); *DISH Network L.L.C. v. Dima Furniture, Inc.,* 2019 WL 2498224 at *8-9 (D. Md. June 17, 2019). It is certainly appropriate here where Defendant exhibits a history of disregard for the law.

### 3. United States-Based Vendors Should Be Enjoined From Doing Business with Goodporn.to or Its Successors

Fed.R.Civ.P. 65 provides the Court discretion to enjoin third parties who act in concert with or participates with the parties or the parties' agents. See Fed.R.Civ.P. 65(d)(2)(C). The Supreme Court has concluded that Rule 65(d) is "derived from the common-law doctrine that a decree of injunction not only binds the parties defendant, but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S. Ct. 478, 89 L. Ed. 661 (1945). The intent of Rule 65(d) is to extend the reach of injunctions to nonparties who nonetheless share common interests with a party, are in privity with a party, are represented by a party, or are subject to a party's control. *TD Ameritrade, Inc. v. Nev. Agency & Tr. Co.*, No. 3:08-CV-00245-LRH-RAM, 2008 U.S. Dist. LEXIS 105677, at *17 (D. Nev. Oct. 30, 2008).

Here, there are several United States service providers that share common interests with Defendant, are in privity with Defendant, and are subject to the control of Defendant. Specifically:

    **a.** Cloudflare, Inc. delivers video content from Goodporn.to to viewers in the United States. (FAC, ¶ 15.)

    **b.** Tonic Corporation is the domain registrar for Goodporn.to. (FAC, ¶ 14.)

    **c.** Cloudflare, Inc. delivers video content from Goodporn.se to viewers in the United States.

    **d.** EasyDNS Technologies is the domain registrar for gpstatus.org.[4]

    **e.** NameSRS is the domain registrar for Goodporn.se.[5]

---

[4] https://whois.domaintools.com/gpstatus.org

[5] https://whois.domaintools.com/goodporn.se

23

Accordingly, Cloudflare, Inc. and Tonic Corporation, Easy DNS Technologies and NameSRS; should be enjoined from any continued assistance or participation with the video streaming actions of Defendant Kumar.

Such relief and application of Fed.R.Civ.P. 65(d)(2)(C) has been granted in other Courts. *Triangl Grp. Ltd. v. Jiangmen City Xinhui Dist. Lingzhi Garment Co.,* No. 16-CV-1498 (PGG), 2017 U.S. Dist. LEXIS 102256, 2017 WL 2829752, at *8 (S.D.N.Y. June 22, 2017) (enjoining "any third parties, including social media platforms,…online marketplaces, online payment providers, including credit card companies, … and other online service providers … to cease providing such services to the Defaulting Defendants" and to transfer domain names to plaintiff); *Warner Bros. Entm't, Inc. v. Doe*, No. 14- CV-3492 (KPF) (S.D.N.Y. Oct. 3, 2014) (enjoining ISPs and registrars); *Tory Burch LLC v. Yong Sheng Int'l Trade Co.*, No. 10-CV-9336 (DAB), 2011 U.S. Dist. LEXIS 158882, 2011 WL 13042618, at *2 (S.D.N.Y. May 13, 2011)(enjoining ISPs and other service providers, and directing, *inter alia*, transfer of domain names).

**4..   Plaintiff Is Entitled To Attorneys Fees.**

Plaintiff also requests attorney's fees in the amount of $157,283, and $18,892.00 in costs. Bjorgum Decl., ¶ 3.  17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs."  *See also*, *Warner* Bros*. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332, 8-9 (C.D. Cal. Nov. 30, 2009), citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999).  The sum of $176,175 is reasonable.

## VI.   <u>CONCLUSION</u>

For the reasons demonstrated above, and based on the supporting evidence, Plaintiff requests that a default judgment be entered against Defendants in accordance with the Proposed Judgment lodged herewith.

Respectfully Submitted,

Dated: December 11, 2023        **KARISH & BJORGUM, PC**

*/s/ A. Eric Bjorgum*
A. Eric Bjorgum, State Bar No. 198392
119 E. Union St., Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
Email: Eric.bjorgum@kb-ip.com

Attorneys for Plaintiff MG Premium Ltd

MOTION FOR DEFAULT JUDGMENT

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff MG PREMIUM LTD certifies that this brief contains 6,810 words, which complies with the word limit of L.R. 11-6.1.


Dated: December 11, 2023            **KARISH & BJORGUM, PC**

                                    */s/ A. Eric Bjorgum*
                                    A. Eric Bjorgum, State Bar No. 198392
                                    119 E. Union St., Suite B
                                    Pasadena, CA 91103
                                    Telephone: (213) 785-8070
                                    Facsimile: (213) 995-5010
                                    Email: Eric.bjorgum@kb-ip.com

                                    Attorneys for Plaintiff MG Premium Ltd

MOTION FOR DEFAULT JUDGMENT