A. Eric Bjorgum (State Bar No. 198392)
Marc A. Karish (State Bar No. 205440)
KARISH & BJORGUM, PC
119 E. Union St., Suite B
Pasadena, California 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
E-Mail: eric.bjorgum@kb-ip.com

Attorneys for Plaintiff
MG PREMIUM LTD

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MG PREMIUM LTD, a limited liability company organized under the laws of the Republic of Cyprus, <br>     Plaintiff, <br>   vs. <br> JOHN DOES 4-20, d/b/a GOODPORN.TO, AMRIT KUMAR, an individual; LIZETTE LUNDBERG, an individual; and EMILIE BRUNN, an individual, <br><br>    Defendants. <br> _____ <br> AMRIT KUMAR, an individual; LIZETTE LUNDBERG, an individual, <br>     Counterclaimants, <br>    vs. <br> MG PREMIUM LTD, a limited liability company organized under the laws of the Republic of Cyprus, <br>     Counterdefendant. | Case No. 21-cv-08533-MCS-SP <br><br> **PLAINTIFF MG PREMIUM LTD'S MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT ENTERED AGAINST DEFENDANTS** <br><br><br> Date: April 1, 2024 <br> Time: 9:00 AM <br> Judge: Hon. Marc Scarsi <br> Courtroom: Courtroom 7C |

TO THE JUDGES OF THIS COURT AND DEFENDANTS AMRIT KUMAR:

PLEASE TAKE NOTICE THAT on April 1, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard by the above-entitled Court, located in Courtroom 7C at 350 West 1st Street, 9th Floor, Los Angeles, California 90012-4565, Plaintiff MG PREMIUM LTD ("Plaintiff") will present its motion to alter or amend the Default Judgment (Dkt. No. 278) entered against Defendants Amrit Kumar, Lizette Lundberg and Emilie Brunn ("Defendants"). This motion is made pursuant to rule 59(e) of the Federal Rules of Civil Procedure and Local Rule 7-18.

Plaintiff makes this motion on the ground that there is new evidence of infringement following the Court's Order, and it would be manifestly unjust not to amend the judgment to include a permanent injunction and enhanced damages and attorneys' fees.

This Motion is based on this Notice and Motion, Memorandum of Points and Authorities, the attached Declarations of Jason Tucker, Anis Baba, and Eric Bjorgum, and the Proposed Amended Judgment filed herewith, and the pleadings, files, and other matters that may be presented at the hearing.

Dated:  February 26, 2024                    **KARISH & BJORGUM, PC**

                                             */s/ A. Eric Bjorgum*
                                             A. Eric Bjorgum, State Bar No. 198392
                                             Telephone: (213) 785-8070
                                             Facsimile: (213) 995-5010
                                             Email: Eric.bjorgum@kb-ip.com
                                             Attorneys for Plaintiff MG Premium Ltd

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................1

I.    INTRODUCTION ............................................................................................1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  LEGAL STANDARD ........................................................5

IV.   ARGUMENT....................................................................................................7

   A.   The Court Should Grant a Permanent Injunction ...........................................7

     1.  There Is Irreparable Harm in this Matter.............................................8

     2.  Damages Are Not An Adequate Remedy.............................................9

     3.  The Balance of Equities Tips Heavily In Plaintiff's Favor. ...........................11

     4.  The Public Interest Favors an Injunction.........................................12

   B.   The Court Should Reconsider Its Award of Damages ...............................12

   C.   The Court Should Reconsider the Attorneys' Fee Award.............................17

V.    CONCLUSION ..............................................................................................22

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d
   892, 898-99 (9th Cir. 2001) ...................................................................6

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th
   Cir. 1997) ..............................................................................................11

*Cadovec v. United States*, No. 5:22-cv-00492-MCS-SP, 2023 U.S.
   Dist. LEXIS 195346, at *3-4 (C.D. Cal. May 31, 2023).......................7

*Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).......................8

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct.
   1837, 164 L. Ed. 2d 641 (2006)............................................................7

*F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233,
   97 L. Ed. 276, 73 S.Ct. 222 (1952)......................................................16

*Fitzgerald Publ 'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110,
   1117 (2d Cir. 1986)..............................................................................13

*Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F.3d 989,
   998 (9th Cir. 2011*)*................................................................................8

*Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.
   2d 40 (1983).........................................................................................19

*Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont.
   1990) ....................................................................................................17

*Hooks for and on Behalf of NLRB v. Nexstar Broad., Inc.*, 54 F.4th
   1101, 1115 (9th Cir. 2022)....................................................................8

*International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659
   (D.N. Ill. 1987)....................................................................................17

*Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104 (N.D. Cal. 2003)............... 9, 10, 18

*Langer v. Butler*, No. 19-cv-0829-DOC (JDEx), 2019 U.S. Dist. LEXIS 208391, 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) ..................................................................................19

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd,* 149 F.3d 987, 996 (9th Cir 1998).............................................................16

*Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) .....................18

*Mariano Rancho, LLC v. Scottsdale Ins. Co.*, No. 2:21-cv-02740-VAP (MARx), 2021 U.S. Dist. LEXIS 263765, 2021 WL 9969139, at *1 (C.D. Cal. Oct. 5, 2021) .....................................................6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1219-20 (C.D. Cal. 2007)* ..........................................9

*MG Premium Ltd v. PornEZ* , Cent. Dist. Cal. case no. 2:23-cv-00349-CBM ......................................................................13

*MG Premium v. Vasily Kharchenko, et al.*, Western Dist. Washington, Case No. 3:21-cv-05733 BHS ...............................................13

*MG Premium Ltd v. Thomas Zang, et. Al,* Western Dist. Of Wash; 3:20-cv-05134 ......................................................................13

*Paramount Pictures Corp. v. Does 1-10*, No. 2:21-cv-09317-MCS-SK, 2022 U.S. Dist. LEXIS 26167, at *6 (C.D. Cal. Jan. 7, 2022) ("Paramount I")............................................ 8, 11, 12

*Paramount Pictures Corp. v. Does,*  2022 U.S. Dist. LEXIS 236227, at *9 (C.D. Cal. Dec. 9, 2022) (*"Paramount III"*) ................................ 13, 14, 18

*Paramount Pictures Corp. v. Does*, 2022 U.S. Dist. LEXIS 236227, at *8-9 (C.D. Cal. Dec. 9, 2022) ("Paramount II")  .................................... 9, 10, 17

*Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000)................................................. 15, 16

*Playboy v. Webbworld,* 968 F.Supp. 1171 (E.D. Tex 1997) ................................16

*Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) ................................19

iii

*Russell v. Invech Inc.,* No. 5:19-cv-01074-FMO-SHK [transferred to
    Judge Scarsi], 2020 U.S. Dist. LEXIS 219852, at *27-28 (C.D.
    Cal. Oct. 26, 2020) ............................................................................... 19

*Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.,* No. 2:20-cv-
    10409-MCS-JEM, 2022 U.S. Dist. LEXIS 181096, at *4 (C.D.
    Cal. Oct. 3, 2022) ................................................................................... 6

*Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th
    Cir. 2003) ................................................................................................ 6

*Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989) .............................. 17

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018) ......................... 19

**Other Authorities**

28 U.S.C. § 1915(a)(3) ............................................................................... 5

Fed.R.Civ.P. 59(e) ......................................................................... 1, 5, 6, 7

Fed.R.Civ.P. 59(e) or 60(b) ........................................................................ 6

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff, MG Premium Ltd and its successor in interest Aylo Premium Ltd (hereinafter "MG Premium Ltd" or the "Plaintiff") hereby moves the Court, in accordance with Fed.R.Civ.P. 59(e), or, alternatively, Local Rule 7-18, to alter or amend the Order Re: Plaintiff MG Premium Ltd's Motion for Default Judgment (Dkt. No. 278) and Judgment (Dkt. No. 279) entered against Defendants, through its counsel, A. Eric Bjorgum of Karish & Bjorgum, PC.

## I.   INTRODUCTION

This motion follows the Court's Order Re: Plaintiff MG Premium Ltd's Motion for Default Judgment (Dkt. No. 278) (the "Order"). In the Order, the Court succinctly restated the relevant facts regarding the default: i.e., (i) Plaintiff owns registered copyrights in thousands of erotic videos, which it alleges are infringed by unauthorized streaming, uploading, and downloading on Defendant's websites goodporn.to and goodporn.se; (ii) Defendants' default has been entered on two grounds (Defendants' failure to attend the final pretrial conference and against Defendant Kumar as a sanction for discovery misconduct); (ii) the Court denied Kumar's application to vacate the default.  (Dkt. No. 278.)

The Court granted in part Plaintiff's Motion for Default Judgment, ruling, *inter alia*, that (i) Judgment is entered in favor of Plaintiff and against Defendants on claims and counterclaims; (ii) MG Premium Ltd shall recover $2,157,000 in statutory damages against Defendant Kumar; and (iii) Defendants shall pay Plaintiff $46,760 in fees.

The Court denied Plaintiff's request for injunctive relief, citing insufficient evidence regarding irreparable harm and the insufficiency of monetary damages. The Court has the power to amend its judgment as justice requires, and it is certainly required in this case. Defendant Amrit Kumar claims he has "taken down" the 1,483 videos identified in the First Amended Complaint, but he

continues to infringe thousands more.  As of February 23, 2024, there were 57,234 videos on Goodporn.to, and 46,359 of them are owned by Plaintiff.  Defendant also displays Plaintiff's trademarks actual logos, which help divert Internet traffic to his pirate site.  (See Declaration of Jason Tucker ("Tucker Decl."), ¶¶ –22-27.) At the time of this writing, Plaintiff's pirated content represents approximately 80% of all content available on the Goodporn website, and Kumar continues to illegally display Plaintiff's trademarks and logos on his website.   All of this arises from an individual who has never appeared in court, spoken with counsel on the phone, or paid any of the thousands of dollars he has been sanctioned.

## II.   **FACTS**

Plaintiff will not re-hash the facts of this case, which have been stated and supported many times. Due to **two** defaults entered against Defendants[1], all of the liability facts in the First Amended Complaint ("FAC") are deemed true, and the Court has made findings in its default and default judgment Orders. Before the Default Orders, the Court had granted partial summary judgment in favor of Plaintiff, finding in favor of Plaintiff on its claims for inducement of copyright infringement and contributory copyright infringement, as well as granting summary judgment against Kumar as counterclaimant on all of his counterclaims against Plaintiff.  (Dkt. No., 195.)  Defendant Lundberg's counterclaims were previously stricken under California's anti-SLAPP statute.  (Dkt. No. 77.)

---

[1] On November 27, 2023, the Clerk entered default against all three Defendants for failure to appear at the pretrial conference. (Dkt. No. 234.)  On December 12, 2023, the Clerk entered default against Amrit Kumar following this Court's adoption of a Report and Recommendation from the Magistrate Judge that Kumar's answer be stricken for repeated failures to comply with Court orders regarding discovery.  (Dkt. No. 263.)

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

Following entry of the Default Judgment, Plaintiff's counsel received an e-mail from Defendant Kumar wherein Kumar claimed to have taken down the 1,438 videos that were listed in Exhibit A to the FAC -- but only those videos. (Declaration of Eric Bjorgum ("Bjorgum Decl."), ¶ 2.)  In addition, Defendant still lists thousands of videos from other sites owned by Plaintiff, including realitykings.com, mofos.com, digitalplayground.com, babes.com, and twistys.com. (Declaration of Anis Baba ("Baba Decl."), ¶ 16.)  With this filing, Plaintiff provides a spreadsheet identifying approximately 3,214 additional registered infringed videos (Tucker Decl., Exh. A.)

As noted, on February 23, 2024, there were 57,234 videos on Goodporn.to, and 46,359 of them are owned by Plaintiff.  Of the remaining videos, 5,039 are owned by Mile High Media and are managed under license by Plaintiff. Over 5,800 of the remaining videos not owned or controlled by Plaintiff are owned by two other studios, and Plaintiff's consultant has confirmed that those are also unlicensed.  (Tucker Decl., ¶ ¶ 22-27.)

Due to the burden of producing tens of thousands of additional registrations and screenprints, Plaintiff is submitting a spreadsheet coordinating over 3,000 of its registered Works with corresponding unauthorized uses on Goodporn.to. (Tucker Decl., Exh. A.)  Plaintiff is also producing a sampling of registrations and corresponding screen prints from Goodporn.to, which are similar to evidence of ownership that the Court previously accepted.  (Tucker Decl., Exhs. E - I, respectively.) As the Court can see from Exh. B to the Tucker Declaration, many illegal videos have been posted already this year.

All of the videos owned by Plaintiff are scripted and professionally produced.  (Declaration of Anis Baba ("Baba Decl."), ¶ 3.)  Plaintiff goes to great lengths to create high-quality movies, a standard desired and expected by Plaintiff's paying customers.  (Baba Decl., ¶ 16.)  The only way to see Plaintiff's full-length videos is through monetary payment.  (Baba Decl., ¶¶ 8 - 9.)  Plaintiff's

full-length videos are not intended for free viewing, and much of Plaintiff's business and branding are tied to controlling access to its premium content to subscribers. (*Id.*, ¶¶ 9 - 11.)

Further, Defendant still displays Plaintiff's logos - not just its trademarks -- but the actual stylized logos configured in a manner similar to Plaintiff's own pages:



(Tucker Decl., Exh. E - I.)

This pattern and practice is consistent with the Defendant's continued gamesmanship.  Following the initial briefing on the motion for default judgment, the Defendant filed other groundless requests of the Court, including an "Ex Parte Application to Set Aside Default Judgment" (Dkt. No. 252), a "Request for Instruction on Appellate Filing fee Payment" (Dkt. No. 264, denied by Docket No. 270) and a Response to the Court's Order adopting the Report and

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

Recommendation of the Magistrate Judge.  In the Order denying the motion to lift default, the Court listed many of Defendant's failures to comply with discovery orders and concluded that Order by noting that its "page-long recitation of months of Defendant's failure to abide by the court's orders clearly shows that the Defendant is at fault in creating any crisis he finds himself in as to the independent ground for the entry of default against him."  (Dt. No. 273 at 5.) Regarding Plaintiff's premature appeal, this Court concluded: "the Court certifies that the proposed appeal is not taken in good faith under 28 U.S.C. § 1915(a)(3)." (Dkt. No. 272 at 2.)

Kumar also sent DMCA Takedown Notices to MG Premium-affiliated companies in an attempt to have MG Premium **remove its own content** from its licensed membership-only websites. Further, Kumar sent numerous DMCA Takedown Notices to Twitter (now X) regarding MG Premium's @Brazzers and @Officialzzstore Twitter Accounts, causing X to disable the accounts on numerous occasions. The @Brazzers Twitter account has over 4.2M followers. It is a major marketing tool for MG Premium that was significantly impacted by Kumar's actions. (Baba Decl., ¶ 23.)

Defendants' actions have benefitted Goodporn.to.  Sending fraudulent DMCA notices to Twitter, under penalty of perjury, crippled Plaintiff's advertising medium, so that his Goodporn Websites could garner better search engine ranking, and in turn, drive more traffic to his advertising-driven websites.  (See Dkt. No. 100-3 at 3-5, attached to the Bjorgum Decl., Exh. A.)

## III.   LEGAL STANDARD

Plaintiff moves in accordance with Fed.R.Civ.P. 59(e)(to alter or amend a judgment) and/or Local Rule 7-18 (for reconsideration).    Fed.R.Civ.P. 59(e) is silent regarding the requirements for a motion to alter or amend a judgment other

than stating that such a motion must be filed no later than 28 days after the entry of the judgment.

Post-judgment motions for reconsideration are governed by Federal Rules of Civil Procedure 59(e) or 60(b). "[A] motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) if it is filed within [28] days of entry of judgment. Otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order." *Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898-99 (9th Cir. 2001); *see also Mariano Rancho, LLC v. Scottsdale Ins. Co.*, No. 2:21-cv-02740-VAP (MARx), 2021 U.S. Dist. LEXIS 263765, 2021 WL 9969139, at *1 (C.D. Cal. Oct. 5, 2021) (quoting *Am. Ironworks*, 248 F.3d at 898-99). Because Plaintiff files this motion 28 days after entry of judgment, Rule 59(e) applies.

As this Court stated in *Seal4Safti, Inc. v. Cal. Expanded Metal Prods. Co.*, No. 2:20-cv-10409-MCS-JEM, 2022 U.S. Dist. LEXIS 181096, at *4 (C.D. Cal. Oct. 3, 2022):

There are four grounds upon which a Rule 59(e) motion may be granted: 1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party presents newly discovered or previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4) there is an intervening change in controlling law." *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (internal quotation marks and emphasis omitted)).

Local Rule 7-18 authorizes three grounds upon which a motion for reconsideration may be brought:

(a) a material [*4] difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order

was entered, or (b) the emergence of new material facts or a change of
law occurring after the Order was entered, or (c) a manifest showing
of a failure to consider material facts presented to the Court before the
Order was entered.

*See Cadovec v. United States*, No. 5:22-cv-00492-MCS-SP, 2023 U.S. Dist.
LEXIS 195346, at *3-4 (C.D. Cal. May 31, 2023)

By this Motion, Plaintiff seeks a permanent injunction, additional damages
and additional attorneys fees.  This relief is warranted because even after this
Court's Order on Default Judgment, Goodporn.to continues to display thousands of
Plaintiff's Works, and with this Motion Plaintiff provides any evidence the Court
ruled was missing in the original request for Default Judgment. This motion is
brought under Rule 59(e) on the basis of continued evidence of infringement
following the Court's initial order on default judgment and because this motion is
necessary to prevent manifest injustice

## IV.   <u>ARGUMENT</u>

### A.   **The Court Should Grant a Permanent Injunction**

Plaintiff is entitled to a permanent injunction against Defendant's massive,
growing infringement. In the Order, the Court found that Plaintiff had not
provided a sufficient record to support this request.  Due to ongoing infringement,
Plaintiff renews its request for equitable relief and provides substantial evidence.
To obtain a permanent injunction, "a plaintiff must demonstrate: (1) that it has
suffered an irreparable injury; (2) that remedies available at law, such as monetary
damages, are inadequate to compensate for that injury; (3) that, considering the
balance of hardships between the plaintiff and defendant, a remedy n equity is
warranted; and (4) that the public interest would not be disserved by a
permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391,
126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). *eBay* was a patent case, but its holding

has been extended to copyright actions. *Flexible Lifeline Systems, Inc. v. Precision Lift, Inc.,* 654 F.3d 989, 998 (9th Cir. 2011*); see also Hooks for and on Behalf of NLRB v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1115 (9th Cir. 2022) (noting that Supreme Court decisions abrogated prior Ninth Circuit ruling adopting a presumption of irreparable harm after showing a likelihood of success in copyright infringement claim).

### 1.  There Is Irreparable Harm in this Matter.

The Ninth Circuit has found irreparable harm for unauthorized reproductions and performances of copyrighted works when the unauthorized use undermines plaintiff's business model. *Disney Enters. v. VidAngel, Inc*., 869 F.3d 848, 866 (9th Cir. 2017) ("The district court had substantial evidence before it that VidAngel's service undermines the value of the Studios' copyrighted works, their "windowing" business model, and their goodwill and negotiating leverage with licensees."); *Paramount Pictures Corp. v. Does 1-10*, No. 2:21-cv-09317-MCS-SK, 2022 U.S. Dist. LEXIS 26167, at *6 (C.D. Cal. Jan. 7, 2022) ("*Paramount I"*) (citing *VidAngel* with approval.)

Here, Plaintiff offers a subscription model for access to the full length versions of its high-quality videos, which are scripted, professionally produced and delivered at high resolution. (Baba Decl., ¶ 3.)   Exclusivity for paying customers is a key part of Plaintiff's business model across its premium brands. By making the videos available without a fee, Defendant goes to the heart of Plaintiff's premium subscription business model.  (*Id.* at ¶ 26.)

Moreover, Defendant's ongoing infringement of the Works is the center of its illegitimate business model.  As shown above, Kumar continues to infringe thousands of registered copyrights.  (Tucker Decl., Exhs. A - I.)  Not only does he use Plaintiff's trademarks to create an air of legitimacy, but he also uses Plaintiff's actual logos.  This further undermines the exclusivity of Plaintiff's brands.

By placing Plaintiff's copyright- protected content on the Goodporn.to and Goodporn.se websites without authorization, Defendant has caused and continues to cause great harm to Plaintiff. Kumar has placed Plaintiff's full-length videos on the Goodporn websites and made them available to anyone, anywhere, with download capability. (Baba Decl., ¶¶ 24.) By making such content available in this manner, Kumar has significantly devalued Plaintiff's content by destroying the exclusivity only otherwise garnered through paid membership or Pay Per View. (Baba Decl., ¶ 9.) In addition, from a piracy perspective, the Goodporn Websites have also allowed anyone to download the library. Plaintiff's library is exposed without any ability to stop or ever stop the damage that has been permanently caused. (Baba Decl., ¶ 29; Tucker Decl., __) This clearly undermines Plaintiff's business model and causes irreparable harm within the structures of *VidAngel* and its progeny. 869 F.3d at 866; *Paramount* 2022 U.S. Dist. LEXIS 26167, at \*6 .

### 2. Damages Are Not An Adequate Remedy.

Monetary damages are not an adequate remedy in this matter. Defendants have been ordered to pay fees or sanctions to Plaintiff multiple times, and have never done so. (Dkt. Nos. 106, 119; Bjorgum Decl., ¶ 4.) In a similar case, this Court has previously stated "Plaintiff has no adequate remedy at law for unauthorized streaming where they are unlikely to collect any damages." *Paramount Pictures Corp. v. Does,* No. 2:21-cv-09317-MCS-SK, 2022 U.S. Dist. LEXIS 109051, at \*14 (C.D. Cal. Apr. 20, 2022) ("*Paramount II*"), citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1219-20 (C.D. Cal. 2007)*; *Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003)* (granting permanent injunction as part of default judgment in copyright infringement action in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will

cease").  In *Paramount II,* the Court found the standard met where a defendant was streaming Plaintiff's copyright-protected works and had not participated in the litigation.   Here, the situation is even worse.   Kumar has gone as far as to create a false agreement alleging ownership of the works, filed with the court under penalty of perjury.[2] This has had the effect of extending this case and has allowed Kumar to keep Plaintiff's infringing works on his websites for months and years. Additionally, Kumar has demonstrated that he will not follow Court orders has already failed to pay thousands of dollars in sanctions. (Bjorgum Decl., ¶ 4.)

Defendant Kumar was ordered to pay $4,287.25 for failing to appear at a deposition, and he never paid anything.  (Dkt. No. 106; Bjorgum Decl., ¶ 4 .)  He has also shown total disregard for Court orders -- to the extent that his answer was stricken and default was entered against him.  (Dkt. No. 261.)  To borrow from the *Sturkie* opinion, Kumar's "lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease." *Jackson v. Sturkie*, 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003).

Finally, an award of only monetary damages in this case would be impractical because Plaintiff would need to return to Court multiple times to deal with the growing infringement.  Kumar has added dozens of new videos to his sites since this Court's Order on the Default Judgment.  (Tucker Decl., ¶ 21.) The

---

[2] This Court has repeatedly stated that the so-called bilateral agreement has no evidentiary value.  For instance, in Docket No. 273 at 5, the Court wrote: "Throughout this litigation, he had relied only on a purported bilateral agreement, which the Court has already ruled does not bear "any indicia or reliability or authenticity sufficient to cast doubt on [Plaintiff's] ownership of the copyrights. (MSJ Order 7, ECF No. 195; *see also* Order Re: Ex Parte Appl. 3, ECF No. 222.)"

only alternative to returning to Court repeatedly is an injunction that is both mandatory and prohibitory (in that it mandates all of Plaintiff's material be removed and prohibits further posting of Plaintiff's new material).

### 3.  The Balance of Equities Tips Heavily In Plaintiff's Favor.

The balance of equities tips heavily in Plaintiff's favor.  As the Court has already found, Plaintiff met its burden of showing ownership by submitting copyright registrations, and Kumar failed to offer any credible evidence undermining its ownership.  (S.J., Dkt. No. 19 at 8.)  Plaintiff has invested the capital to create the Works, and they are displayed on its own web pages. (Baba Decl., ¶¶ 8 - 9.)  Plaintiff has spent over $2 million registering over 40,000 Works with the U.S. Copyright Office.  (*Id.*, ¶ 7.)   In short, Plaintiff owns everything there is to own regarding these Works.   Currently, of the 57,234 videos on Goodporn.to, 46,359 (80%) are owned by Plaintiff.  (Tucker Decl., ¶ 22.)

As the Court stated in *Paramount I*, "any relief Plaintiffs request that relates to stopping Defendants from performing or reproducing the 138 copyrighted works, the balance of equities strongly tips in Plaintiffs' favor." 2022 U.S. Dist. LEXIS 26167, at *7 (C.D. Cal. Jan. 7, 2022). In this case, Plaintiff owns thousands of registered works that were wrongfully displayed and continue to be displayed on Defendant's Goodporn.to and Goodporn.se sites.  (Tucker Decl., ¶¶ 22 - 27.)

Defendant, on the other hand, has already been adjudged an infringer.  Whatever "equity" he is entitled to is minimal.  As the Ninth Circuit has stated: "[W]here the only hardship a defendant will suffer from an injunction is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration . . . ." *Cadence Design Sys., Inc. v. Avant! Corp*., 125 F.3d 824, 830 (9th Cir. 1997).  Here, Defendant continues to infringe with impunity. He is owed no equitable consideration.  He

may have legal rights of appeal, but there are no equities here in his favor.  As this Court stated in partially granting the motion for Default Judgment, "The Court patiently shepherded this case for over two years, giving Defendants opportunity after opportunity to comply with their obligations and defend themselves." (Dkt. No. 278 at 6.)  The equities are now heavily in Plaintiff's favor.

### 4.  The Public Interest Favors an Injunction.

The public interest here favors an injunction.  "The public has an interest in maintaining a system of intellectual property protection that encourages the creation and production of films, videos, and other useful arts." *VidAngel*, 869 F.3d at 867.  Here, Plaintiff maintains a vast library of adult-themed material that was created in compliance with all laws and regulations.  The final Works have been registered with the U.S. Copyright Office.  As this Court stated in connection with infringing streams in *Paramount I*, a preliminary injunction would be in the public interest because it would help maintain that system by protecting against widespread copyright infringement. 2022 U.S. Dist. LEXIS 26167, at *8. (C.D. Cal. Jan. 7, 2022).

Further, Defendants do not maintain the required DMCA agent to receive claims of infringement.  Nevertheless, Plaintiff has sent thousands of DMCA notices regarding Defendants' infringement, and all of them have been ignored. (Tucker Decl., ¶¶ 30-31.)

For all of these reasons, the Court should grant the injunctive relief requested in the FAC and proposed injunction.

### B.  The Court Should Reconsider Its Award of Damages

In its Order, the Court awarded statutory damages of $1,500 per infringed work.  The court found that willfulness was deemed true upon entry of default, making available damages of $750 - $150,000 per infringement.  The court stated,

however, that Plaintiff had not provided evidence to support a specific number. Nevertheless, the Court awarded $1,500 per Work (twice the statutory minimum) for 1,483 Works. With this filing, that number should be substantially augmented.

Indeed, Plaintiff has received $15,000 per work in other cases. *E.g.*, *MG Premium Ltd v. PornEZ*, Cent. Dist. Cal. case no. 2:23-cv-00349-CBM; *MG Premium v. Vasily Kharchenko, et al.*, Western Dist. Washington, Case No. 3:21-cv-05733 BHS; *MG Premium Ltd v. Thomas Zang, et. Al*, Western Dist. Of Wash; 3:20-cv-05134 (copies of these orders are attached as Exhibit B to the Bjorgum Declaration.)

In applying its discretion with regard to statutory damages a district court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Peer Int'l Corp.*, 909 F.2d at 1336 (internal quotation marks omitted). As this Court noted in another *Paramount* case, "factors independent of Defendants' culpability—the value of the copyrights, Plaintiffs' lost revenue, and the deterrent effect on others—militate an award of maximum statutory damages." *Paramount Pictures Corp. v. Does*, 2022 U.S. Dist. LEXIS 236227, at *9 (C.D. Cal. Dec. 9, 2022) (*"Paramount III"*) (*citing Fitzgerald Publ 'g Co., Inc. v. Baylor Publ'g Co., Inc.*, 807 F.2d 1110, 1117 (2d Cir. 1986) (collecting cases)). Consideration of these factors militates to at least a $15,000 award per work in this case.

Each of Plaintiff's copyright-protected Works requires or has required great sums of money to create detailed storylines; film in various locations; construct detailed and intricate sets; employ talented writers, directors, actors (including industry celebrity talent with large public followings and fanbase), and editors; use the highest quality production and post-production equipment; and exceed the production value of typical adult erotic entertainment. (Baba Decl., ¶¶ 3-4.)

MG Premium Ltd earns money on these and other videos by the display of the videos to members of paid websites owned and/or operated by Plaintiff,

wherein users pay a monthly fee to have access to Plaintiff's copyrighted works. These videos are not intended for viewing for free or by persons who are not paid members.  Plaintiff's memberships range from $9.99 to $32.99 per month. (Baba Decl., ¶ 11.)

Potential users of Plaintiff's services will, in all likelihood, not pay monthly rates for the right to access and view content that is available for free. The prevalence of piracy seriously threatens every element of Plaintiff's business - certainly the value of paid membership sites.  Simply put, if Plaintiff's videos and images are readily available for free, there is little incentive for an end user to pay for a membership.  "Free" will win, every time.  (Tucker Decl., ¶ 37.)

MG Premium Ltd owns one of the largest portfolios of premium adult-oriented audiovisual content in the world. In its library of works, MG Premium Ltd is the copyright holder of "Reality Kings," "Brazzers," "MOFOS," "Babes.com," and "Twistys." These are the most well-known and popular brands in the legal adult entertainment industry.  (Baba Decl., ¶ 19.)  Plaintiff goes to great lengths to protect its intellectual property.  It employs multiple full-time staff to send notices of infringement, and it hires outside consultants and counsel to manage, maintain, and protect its portfolio of intellectual property.  (Tucker Decl., ¶ 52.)  Its content is still among the most pirated in the world.  Defendant has been able to pirate it for two years by simply claiming he bought it with a forged agreement. A large damage award will deter similar infringers.

In *Paramount III,* this Court found:

Defendants' unauthorized and uncompensated use of the copyrighted works causes significant revenue loss because illegitimate streaming sources, like Defendants', divert potentially millions of dollars of paid viewership away from licensed sources contributing to Plaintiffs' revenue streams. (See Dec. 6, 2022 van Voorn Decl. ¶ 17; Mot. 16-19.) The high value of Plaintiffs' copyrights also supports a finding

that Defendants' infringement causes significant revenue losses. And finally, maximum statutory damages would serve the purpose of deterring Defendants and others from infringing Plaintiffs' valuable works.

To be sure, *Paramount* involved mainstream, popular films, and the Court awarded $150,000 per work. Here, Plaintiff seeks just one-tenth of that amount, which it has repeatedly received elsewhere. (Bjorgum Decl., Exh. B.)

However, Plaintiff's losses are substantial, as shown by the following calculations. According to Similarweb, a trusted data analytics company, in the period between November 2023 to December 2023, Goodporn.to had over 17,910,000 visitors. (Baba Decl., ¶ 26.) Plaintiff previously a Similarweb report showing that between the period of June 2021 to August 2021, Goodporn.to saw over 17,240,000 visitors. (*Id.*) Using those two data ranges, that is an average of over 5.7 MILLION visitors per month seeking high-quality content that would have instead paid for a membership to MG Premium's websites.

Even with a modest calculation of 1% of 5.7 million viewers per month paying (57,000 customers) for MG Premium's cheapest membership (a single brand at $9.99), monthly revenue would have been $569,430. This case was filed in October 2021. The damage would thus be $15,374,610. In addition, Kumar has monetized approximately 159,600,000 visitors over these 27 months. (Baba Decl., ¶ 31.) This does not account for damage before the filing of the case or the damage he is currently causing by allowing Plaintiff's content to continue to be viewed as a result of Kumar's actions. (Baba Decl., ¶ 31.)

In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), the plaintiff magazine publisher sued a website for publishing its photographs on the Internet. Evaluating damages the Court wrote:

> While it would be difficult to quantify Perfect10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download and easy to copy. A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement.

*Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11. The Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph. This $100,000 per photograph certainly demonstrates a basis for Plaintiff claiming that much per video, if not more.

This Court has already found the infringement to be willful. (Dkt. No. 278.) Statutory damages serve both compensatory and punitive purposes, and therefore are appropriate whether there is adequate evidence of actual damages suffered by the plaintiff or profits realized by defendants to effectuate the statutory policy of discouraging infringement. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd,* 149 F.3d 987, 996 (9th Cir 1998). Prior federal court decisions have recognized the high economic value of erotic material. *See Playboy v. Webbworld,* 968 F.Supp. 1171 (E.D. Tex 1997) (awarding $5,000 per erotic photo); *and Perfect 10, Inc.,* 2000 U.S. Dist. LEXIS 4564 at 11 (awarding $100,000, the then maximum, per adult photograph).

The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).

It is appropriate that the Court use opportunities such as this to send a message of deterrence to would-be infringers that, "it costs less to obey the copyright laws than to disobey them." *International Korwin Corp. v. Kowalczyk,* 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987).

---

The District Court in *Korwin* held that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors: the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id. See also*, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).

Thus, to be effective, statutory damages should exceed what is provable as lost profits or disgorgement of the infringers' profits; otherwise, where damages are difficult to prove, infringement would be a zero-sum game for the infringer. The numbers above only tell half the story because the profits lost by Plaintiff are in the normal course of business, when it maintains control over the Works. Here, Plaintiff has lost control of its library to an infringer who encourages downloading. (Tucker Decl., ¶ 35.) *Paramount Pictures Corp. v. Does*, 2022 U.S. Dist. LEXIS 236227, at *8-9 (C.D. Cal. Dec. 9, 2022) ("Additionally, the substantial web traffic Defendants gained from illegally streaming Plaintiffs' copyrighted works has likely created a heavy windfall in advertising revenue at Plaintiffs' expense. . . Defendants' conduct leaves little doubt that maximum statutory damages are warranted").

## C.  The Court Should Reconsider the Attorneys' Fee Award

The Court issued a fee award with reference to the Local Rules regarding default judgments. Plaintiff submits that that number should be enhanced to further deter Kumar and those in his position. As this Court has stated elsewhere:

> Before awarding attorneys' fees under the Copyright Act, courts consider the following factors: "the degree of success obtained; frivolousness; motivation; objective unreasonableness . . . and the need in particular circumstances to advance considerations of

compensation and deterrence." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996) (ellipsis in original) (internal quotation marks omitted).

*Paramount III,* 2022 U.S. Dist. LEXIS 236227, at *10 (C.D. Cal. Dec. 9, 2022).

Regrading success, Plaintiffs' "success is complete and unquestioned: a default judgment . . . and an award of statutory damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1104 (N.D. Cal. 2003). This case was not frivolous, and there has been no assertion that there was an improper motivation or that it was objectively unreasonable.

Concerns of deterrence and compensation weigh heavily in Plaintiff's favor. Plaintiff submits that, particularly given Kumar's continued infringement that amount should be increased to reflect the reasonable fees available under the lodestar calculation. The Internet traffic created by adult websites can be staggering. Goodporn.to and its mirror site have generated 205,200,000 hits during this matter. If even 0.1% of those hits results in monetization, piracy on this level becomes a numbers game that favors the pirates. To further the goal of deterrence, the attorney fee award must work in tandem with the damages award to make the game not worth the risk.

This case is made more egregious because Kumar has hidden behind an apparently fake identity and the claim that he is in pro per. As the Court noted, it has had to "shepherd" this case for Defendants so that they had due process as pro per parties. They have rebuffed the Court's efforts to help them and even wasted hundreds of dollars of postage. The docket is littered with over two dozen returned mailings from the Court to Defendants. (E.g., Dkt. Nos. 120 - 123, 185 - 194, 197 - 199, 201 - 206, 212 - 221.) All the while, they have been making money from copyright infringement.

At the very minimum, this Court should award the reasonable fees incurred by Plaintiff's counsel so that similarly situated pirates know that they will be

paying for the unreasonable burdens they place on copyright holders and the judiciary. This Court has previously granted lodestar-enhanced fees when awarding a default judgment. *E.g.*, *Russell v. Invech Inc.,* No. 5:19-cv-01074-FMO-SHK [transferred to Judge Scarsi], 2020 U.S. Dist. LEXIS 219852, at *27-28 (C.D. Cal. Oct. 26, 2020). When a party makes such a request, "the court is obligated to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018). The "lodestar" method multiplies the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Courts should exclude hours that are excessive, redundant, or not reasonably expended. *Id.* at 434. It is in the court's discretion to determine the reasonableness of the [*28] fees requested. *Id.* at 433. A court may consider a number of pertinent factors in determining the reasonableness of an attorney's fees award. *Langer v. Butler*, No. 19-cv-0829-DOC (JDEx), 2019 U.S. Dist. LEXIS 208391, 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors))[3]

---

[3] Those factors are: The factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 539 n.1.

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

In this matter, Plaintiff's counsel has consistently charged $395 per hour which the court previously found reasonable. This court found in docket number 119:

> Bjorgum's $395 hourly rate and Olavi's $310 hourly rate are reasonable. Bjorgum is a partner at his firm, which provides "high quality intellectual property services at a cost that would make these services available to most small businesses and individuals." (Bjorgum Decl. ¶¶ 1, 5.) Notably, Bjorgum clerked at a federal district court early in his career and has been in private civil practice for about 25 years. (*Id.* ¶ 6.)

Plaintiff seeks to be reimbursed for approximately 413 hours, for a total of $163,968. (See Supplemental Bjorgum Decl. detailing hours.)  That is more than reasonable. Further, Plaintiff's counsel's rates are well within the lower end of rates charge for intellectual property litigation work pursuant to the recent most recent survey of economic activity done by the American Intellectual Property Association ("AIPLA").  The AIPLA's "Report of Economic Activity" is produced every other year.  The 2023 Report found that, in in a copyright litigation matter  with $10 -- $25 million at stake, the median fees through motion practice were $450,000.  (Bjorgum Decl., Exh. C.) This is a national average, and fees in Los Angeles are generally higher.

Here, the case proceeded through substantive motion practice and heavy discovery motion practice because Defendants refused to attend any depositions. This case has been truly *sui generis*.  Plaintiff has brought a successful anti-SLAPP motion, a successful summary judgment motion and a massive discovery sanctions motion resulting in Defendants' answers being stricken.  That motion was preceeded by months of missed depositons and discovery motion practice. Defendants brought a variety of bizarre motions, including a "Motion to Stay Anonymous and Use Email," a "Motion to Modify Order," and "Ex Parte

Application to Cancel Settlement Conference" and an "Ex Parte Application to Set Aside Default Judgment." Kumar was sanctioned $4,287.25, and he has paid nothing. And Kumar has already filed an improper appeal, seeking to appeal an interlocutory order.

Several of the relevant factors are implicated by these facts.  This case required a high degree of skill because Plaintiff was working against a ghost who never appeared on Court or called Plainitff's counsel in two years, yet, when it served him, was able to file briefs and obtain lenieny on the claim that he was a "pro per" litigant.  Defendant was a burden on Plaintiff and the Court system, filing numerous ex parte applications and requests for reconsideration, which were universally denied. Plaintiff's counsel was precluded from other employment, particularly when trying to take depositions, because each Defendant claimed to be available only late at night or very early. Plaintiff's counsel was up at 2:00 a.m. three times for Defendant's deposition, and he never appeared.  That effectively ruined the next day's work. This case involved copyright issues on a mass scale with thousands of registrations involving sensitive material with the attendant difficulties of presenting that evidence. None of the Defendants have appeared. It further involved a plaintiff defendant who never would appear and that's never spoken with different player plaintiffs counsel on the phone.

 Further, Defendant Lundberg brought a motion that implicated the anti-SLAPP statute and First Amendment concerns which are highly particular to California law. Plaintiff's counsel has worked for large copyright holders in the Southern California area such as Mattel and DirecTV on similar piracy issues. This experience was invaluable during this case.

Plaintiff's requests $163,968 in fees and costs of $18,892 in costs.  This is eminently reasonable.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court should amend its judgment to (i) grant the permanent injunction requested in the Motion for Default Judgment; (ii) award statutory damages in the amount of $15,000 per work; (iii) and award at least $163,968 in fees and costs of $18,892.

Respectfully Submitted,

Dated:  February 26, 2024                    **KARISH & BJORGUM, PC**

*/s/ A. Eric Bjorgum*
A. Eric Bjorgum, State Bar No. 198392
119 E. Union St., Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
Email: Eric.bjorgum@kb-ip.com

Attorneys for Plaintiff MG Premium Ltd

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff MG Premium Ltd certifies that this brief contains 6,048 words, which complies with the word limit of L.R. 11-6.1.


*/s/ A. Eric Bjorgum*
A. Eric Bjorgum, State Bar No. 198392
119 E. Union St., Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
Email: Eric.bjorgum@kb-ip.com

Attorneys for Plaintiff MG Premium Ltd

MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT